**Ronald STAEHELI, Relator,**

v.

**CITY OF ST. PAUL, Respondent.**

**No. A06–1146.**

Court of Appeals of Minnesota.

May 22, 2007.

Ronald Staeheli, Eagan, MN, pro se relator.

John J. Choi, St. Paul City Attorney, Portia Hampton–Flowers, Assistant City Attorney, St. Paul, MN, for respondent.

Considered and decided by MINGE, Presiding Judge; STONEBURNER, Judge; and WRIGHT, Judge.

## OPINION

MINGE, Judge.

By a certiorari appeal, relator Ron Staeheli challenges the St. Paul City Council's decision to cancel his license to evaluate homes under the St. Paul Truth–in–Sale–of–Housing program. Because we conclude that the decision was procedurally sufficient, was not based on error of law, was supported by substantial evidence, and was not arbitrary and capricious, we affirm.

## FACTS

The St. Paul Truth–in–Sale–of–Housing (TISH) program is designed to provide prospective home buyers with information on the houses they are considering purchasing. Under the program, the city licenses TISH evaluators who inspect homes and complete disclosure reports in accordance with the city's guidelines. The reports must be displayed for prospective buyers to see. Chapter 189 of the St. Paul City Code governs the TISH program and provides for the establishment of a TISH examining board, which has the responsibility to develop evaluator guidelines, create a code of ethics for evaluators, and take adverse action against licensed evaluators.

Relator started working as a licensed TISH evaluator in the early 1990s. Between 2002 and 2005, the St. Paul TISH program received eight complaints charging relator with inconsistencies between his disclosure reports and the city's evaluator guidelines. Between November 2002 and January 2005, the TISH board took adverse action against relator on two occasions. Both actions were prompted by multiple complaints. On both occasions, relator's license was suspended for 30 days and relator was placed on probation for a year. While on probation in April 2004, relator performed an evaluation that resulted in the license revocation that is the subject of this appeal.

In November 2003, relator evaluated a home on Middleton Avenue in St. Paul (the "home"). In his report, relator marked the "[w]aste and vent piping" with a "B," meaning "[b]elow minimum standards." With respect to that item, relator also noted "[i]mproper material and design, mixed plastics." In item # 8, relator marked the "[e]lectrical service installation/grounding" with the letter "M," meaning that the item meets "minimum" standards. Relator evaluated the home again in April 2004. In contrast to the 2003 evaluation, relator marked the "[w]aste and vent piping" as "M" and made no notation. Relator again rated the "[e]lectrical service installation/grounding" as "M."

In July 2005, a TISH administrator received a phone call from the woman who had purchased the Middleton Avenue home in September 2004. The homeowner asserted that the home had a serious plumbing problem and that relator's April 2004 TISH evaluation was inaccurate. The administrator completed a TISH complaint and investigation report, but she simply noted "drain not up to code, no vents, report = M." After the home-

owner's initial call, code-enforcement inspectors inspected the home. The inspectors determined that relator's April 2004 disclosure report inaccurately evaluated the home's "[w]aste and vent piping" and electrical service-mast installation. The inspectors took photographs of the plumbing and electrical problems. After the inspectors' evaluation, TISH sent relator a formal complaint identifying the deficiencies in his April 2004 disclosure report.

Several days later, TISH administrators received another oral complaint from the homeowner, which the homeowner reduced to writing. The homeowner reported that relator had called her and offered to resolve the charges privately, but she refused. Ten minutes later, the homeowner received a phone call from a female who identified herself as "Susan Brown from the City Attorneys office." The caller claimed to be investigating the TISH complaint and asked numerous questions about it. The caller refused to answer the homeowner's questions and abruptly ended the conversation.

In August 2005, a city employee met relator, relator's son, the homeowner, and her plumber at the home so that relator could personally observe the home's plumbing and electrical deficiencies. Although the homeowner told relator that he could not videotape her property, while she was in the basement with the others, relator attempted to videotape documents on the kitchen table. The homeowner also reported that relator was "very angry, abrupt, [and] making accusations about others who might have been involved in assessing the plumbing issues."

On November 4, 2005, TISH sent relator notice that the TISH board intended to consider adverse action. The notice scheduled a disciplinary hearing for November 29. Relator requested a continuance, and the hearing was reset to January 10, 2006.

A hearing examiner conducted relator's disciplinary hearing. The TISH board then deliberated. On February 8, by a 4–1 vote, the board adopted findings and revoked relator's TISH license. Relator appealed to the St. Paul City Council. The City Council held a public hearing in April 2006, and, based on the record of the TISH board, confirmed the board's decision. The mayor approved the decision. This certiorari appeal follows.

## ISSUES

I. Did the city's decision deprive relator of procedural due process?

II. Is the city's decision based on an error of law?

III. Is the city's decision supported by substantial evidence?

IV. Was the city's decision arbitrary and capricious?

## ANALYSIS

 City council action is quasi-judicial and subject to certiorari review "if it is the product or result of discretionary investigation, consideration, and evaluation of evidentiary facts." *Pierce v. Otter Tail County,* 524 N.W.2d 308, 309 (Minn.App. 1994), *review denied* (Minn. Feb. 3, 1995). Certiorari review is limited to "questions affecting the jurisdiction of the board, the regularity of its proceedings, and, as to merits of the controversy, whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it." *Dietz v. Dodge County,* 487 N.W.2d 237, 239 (Minn.1992) (quotation omitted). As a reviewing court, we will not retry facts or make credibility determinations, and we will uphold the decision "if the lower tribunal furnished any legal and substantial basis for the action taken." *Senior v. City of*

*Edina,* 547 N.W.2d 411, 416 (Minn.App. 1996) (quotation omitted).[1]

## I.

■ The first issue is whether the city of St. Paul deprived relator of procedural due process. This court reviews the procedural due process afforded a party de novo. *Zellman ex rel. M.Z. v. Indep. Sch. Dist. No. 2758,* 594 N.W.2d 216, 220 (Minn. App.1999), *review denied* (Minn. July 28, 1999). Both the United States Constitution and the Minnesota Constitution provide that no person shall be deprived of "property without due process of law." U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7. The parties do not dispute that the city deprived relator of a property interest by revoking his TISH license and that the city was required to afford relator procedural due process. *See, e.g., Trumbull Div., Owens–Corning Fiberglass Corp. v. City of Minneapolis,* 445 F.Supp. 911, 916 (D.Minn.1978) (concluding that a city's failure to renew an asphalt-manufacturing license deprived the plaintiff of a property interest).

■ Generally, due process requires adequate notice and a meaningful opportunity to be heard. *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). But adequate notice and a meaningful opportunity to be heard are flexible concepts depending on the circumstances. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). "There is little disagreement … that municipalities, when

they act as licensing bodies, may be subject to the requirements of due process; but courts have differed sharply on what particular requirements may apply in any given situation." *Trumbull Div.,* 445 F.Supp. at 915. We consider three factors to determine the due process rights of relator:

> [f]irst, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews,* 424 U.S. at 335, 96 S.Ct. at 903.

■ Relator's license is important to his livelihood and constitutes a substantial private interest, the deprivation of which is accorded the protection of procedural due process. Relator argues that the decision to cancel his evaluator's license deprived him of procedural due process in three ways.

### A. Length of the TISH Hearing

Relator contends that he was not given enough time at the TISH hearing to present evidence, cross-examine witnesses, and make his case. Relator and the city were each given 45 minutes to present their positions, which included making oral statements, presenting testimony, and

---

**1.** Relator asserts that the Minnesota APA provides the applicable scope of review on appeal. *See* Minn.Stat. § 14.69 (2006). However, the APA's plain language requires a decision-making body to possess "statewide jurisdiction" to qualify as an "agency" under the Minnesota APA. *See City of Mankato v. Mahoney,* 542 N.W.2d 689, 693 (Minn.App. 1996). The city of St. Paul does not possess

such jurisdiction. We are aware that some of our decisions cite the APA as the applicable standard of review. *See, e.g., Rostamkhani v. City of St. Paul,* 645 N.W.2d 479, 483 (Minn.App.2002). In any event, the APA's scope of review is similar to the common law scope of review on certiorari. Thus, the same standard applies regardless of the applicability of APA.

cross-examining witnesses. In addition, they were allowed to place written materials and exhibits into the record. Following the initial hearing, the parties were given one week to submit additional documents and written argument for the board's consideration. A follow-up hearing was held, and each party was given 30 minutes to present rebuttal evidence. The time that the TISH board members used to ask and obtain answers to their questions was not counted toward either party's time limit.

■■■ Relator contends that the 45–minute primary presentation, 30–minute rebuttal, and the opportunity to present written material did not permit him to adequately present his position. We are sympathetic to respondent's concern. While efficiency may be an important and unavoidable consideration in conducting adjudicatory proceedings, there is a real danger that administrative bodies will arbitrarily exclude probative evidence based on an efficiency rationale. *Cf.* 22 Charles Alan Wright & Kenneth W. Graham Jr., *Federal Practice and Procedure: Evidence* § 5219, at 299 (1978). At the same time, we recognize that municipalities are qualified to measure the costs and benefits of their procedures, and to balance these considerations against the property interests at stake. *See* 2 Richard J. Pierce, Jr., *Administrative Law Treatise* § 9.5, at 636 (4th ed.2002). We are cautious in imposing additional procedures when the administrative body has carefully designed its procedural scheme. *See id.*

Here, the time limit imposed at the TISH hearing appears to have been arbitrary. There is no indication in the record that the time allotted to relator was determined on the basis of this particular dispute or that the city balanced the property interest at stake with the cost of providing additional time to relator. Given the complexity of the charges outlined in the formal complaint, the time allotted relator may have been inadequate.

■■■ But there is also no indication in the record that relator was prejudiced by the city's time limit. Relator does not claim that he or any witnesses were unable to testify due to the time restraint, and relator has not shown that he was unable to present material evidence or that the board was unable to thoroughly consider an important issue due to the time limit. The administrative burden of permitting more time for a hearing may be minimal, and the time allotted may have been inadequate. But absent even a facial showing of prejudice, we cannot conclude that additional time would have increased the fairness of the hearing for relator, and we will not reverse and require the city to afford a new hearing with greater time available. *See* Minn. R. Evid. 403 (permitting the exclusion of evidence when presentation of that evidence is a "waste of time").

■■■ Based on the record in this proceeding, we emphasize that a fair hearing is a cornerstone of due process, that the application of arbitrary, inflexible time limits has the inherent potential to prejudice a licensee's ability to present his or her case, and that a credible claim of prejudice would constitute reversible error. A licensee's interest in the loss of his or her livelihood is substantial compared to the modest cost of the time necessary for an adequate hearing.

### B. Timely Notice

■■■ Relator also argues that the city deprived him of procedural due process by failing to provide timely notice of the January 2006 hearing or the substantive content of the hearing. "Due process requires that a defendant must be given adequate time to investigate the charges

and prepare its defense." *In re License of W. Side Pawn,* 587 N.W.2d 521, 523 (Minn. App.1998), *review denied* (Minn. Mar. 30, 1999) (quotation omitted). Relator received formal notice of the hearing date on November 4, 2005. At relator's request, the hearing was continued to January 10, 2006. The city sent relator a letter on November 22 confirming that date. Accordingly, relator had well over a month to prepare for the disciplinary hearing.

Relator asserts that he was prejudiced and his due process right to notice was violated because the hearing was canceled shortly before January 10 and then rescheduled on short notice. The record indicates that relator requested that the January 10 hearing be delayed, that a city official emailed relator on December 28, 2005, informing him that he would "ask that the action on the 10th be delayed," that the January 10 hearing was never canceled, and that on January 9, 2006, relator received confirmation that the hearing would not be rescheduled. Because the January 10 hearing date was never canceled, and because the record indicates that relator received notice of the date, time, location, and substance of the hearing, we conclude that the notice met the time requirement of due process.

### C. Surprise Complaints

 Relator also argues that he was not given adequate notice of the substantive complaints filed against him. The record indicates that relator received a detailed report from TISH, dated September 9, 2005, which recounted the history of complaints against relator, summarized the current complaints, and identified potential code violations. The document was prepared as a report to the TISH board, and relator does not dispute receipt of this report. The report sufficiently described the complaints evaluated at the hearing,

and it put relator on notice of the standards under which his conduct would be evaluated, including the evaluators' code of ethics. And, within days of the initial complaint, relator was allowed to personally inspect the home.

Relator further argues that the city presented "surprise additional complaints" at the TISH disciplinary hearing. According to relator, this additional material "added allegations that [relator] violated Minnesota [Statutes section] 609.475," which makes it a crime to "falsely impersonate[ ] a ... public official with intent to mislead another into believing that the impersonator is actually such ... official." Minn.Stat. § 609.475 (2004). Contrary to relator's assertion, the record does not allege that relator was charged with violating that Minnesota statute. Although, the TISH board's ultimate findings of fact and the city council decision addresses the impersonation incident, the decision of the board was not based on the criminal statute.

On this record, we conclude that the reference to the criminal law on impersonation was not error and did not unfairly prejudice relator. We further conclude that although the report was not designed as a formal notice of charges and was not a model of clarity, it was sufficient to inform relator of the proposed action. The notice requirements of procedural due process were met.

### II.

The next issue is whether the city's decision was based on an erroneous interpretation of St. Paul's ordinances and published guidelines.

### A. Basis for Cancellation of Relator's License

 First, relator argues that under the standards established by the city of St. Paul, the record does not warrant

revocation of his license. The interpretation and application of a city ordinance is a question of law, which we review de novo. *Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 608 (Minn. 1980). "The opinions of the governmental authority, while entitled to consideration, are not as persuasive as they would be on questions of fact within its purview." *Id.*

Several sources of legal authority are relevant to revoking a TISH evaluator license: chapter 310 of the St. Paul Legislative Code (SPLC), chapter 189 of the SPLC, and the TISH board's Guidelines for Disciplinary Action.

1. Saint Paul Legislative Code, Chapter 310 [2]

Chapter 310 of the SPLC establishes uniform license procedures for the city of St. Paul. Chapter 310 authorizes the city council to take adverse action against a licensee who "has violated, or performed any act which is a violation of, any of the provisions of these chapters or of any statute, ordinance or regulation reasonably related to the licensed activity." St. Paul, Minn., Legislative Code § 310.06(b)(6)(a) (1999) (hereinafter "SPLC").

The SPLC sets forth a presumptive-penalty scheme for license violations. Under chapter 310, presumptive penalties are calculated according to the "[t]ype of [v]iolation" and the number of times a licensee has "appear[ed] before the [city] council." SPLC § 310.05(m), (v) (2005). Unless the

violation is a felony or results in "[d]eath or great bodily harm," revocation of a license is appropriate only after three prior appearances. SPLC § 310.05(m). Deviation from the presumptive penalties is permissible for "substantial and compelling reasons," so long as the council provides "written reasons" to explain the departure. *Id.*

2. Saint Paul Legislative Code, Chapter 189 [3]

In addition to establishing the TISH board and delegating certain responsibilities to the board, chapter 189 of the SPLC governs the conduct of TISH licensees. Section 189.14 provides: "(1) Each truth-in-sale of housing evaluator, when preparing a disclosure report, shall set forth any structural defects, any immediate hazards to health and safety, and/or other deviation(s) from the standards set forth in the evaluator guidelines." SPLC § 189.14(a)(1) (2004). Section 189.15 describes the duties of TISH evaluators as follows:

(a) Each evaluator is required to:

(1) Comply with the code of ethics;

(2) Complete the disclosure report in accordance with the standards in the evaluator guidelines;

. . . .

(b) Failure to comply with any one or more of these duties shall be sufficient

---

**2.** The parties do not dispute the applicable version of the SPLC. We note that section 310.05 was amended in April of 2005, after the conduct forming the basis of the license termination, but before the TISH board's decision. The 2005 amendment appears to have enacted a presumptive penalty scheme that was not in effect at the time of relator's conduct. Here, because the parties do not dispute the applicability of that scheme to resolution of the current dispute, we apply and

cite the 2005 version of section 310.05. Likewise, we cite the version of section 310.06 enacted in 1999 and substantially unchanged until November 2006.

**3.** The parties do not dispute the applicable version of SPLC chapter 189. Accordingly, we cite the version supplied by the parties and last altered in 2004, prior to the city's termination of relator's TISH license.

cause for the board to take adverse action against the license or licensee. . . . SPLC § 189.15 (2004).

### 3. St. Paul's TISH Guidelines for Disciplinary Action

The final source of authority is the city's TISH Guidelines for Disciplinary Action. The city code delegates to the TISH board the responsibility to: develop, adopt, and issue evaluator guidelines; develop and enforce a code of ethics for evaluators; and take necessary adverse action against licensed evaluators. SPLC § 189.10(a) (2004). Pursuant to this authority, the TISH board developed and published guidelines that the city council adopted in April 2002. These guidelines govern the board's imposition of adverse action on TISH licensees. In relevant part, the guidelines provide:

> An evaluator or evaluator's license issued under Chapter 189 may be denied, revoked, suspended, canceled, not renewed or subject to other adverse action if the evaluator:
>
> . . . .
>
> 2. Has intentionally or by established pattern violated any of the provisions of Chapter 189 or any duties specifically required by Sec. 189.15.
>
> . . . .
>
> 8. Has been the subject of substantiated complaints for his/her evaluation services.
>
> 9. Has demonstrated a pattern of incompetency in conducting evaluations.

St. Paul, Minn., Truth–in–Sale of Housing Board Guidelines for Disciplinary Action 1 (adopted Apr. 17, 2002) [hereinafter "TISH Guidelines"]. These guidelines also establish presumptive penalties for each type of violation, depending on the "class" of the violation. The presumptive-penalty scheme is similar to the scheme established in chapter 310 of the SPLC, but it differs in several respects. Under the guidelines' presumptive scheme, each violation is classified on a scale of one to four. *Id.* at 3. A Class 1 violation is "one where the condition that was not noted is a condition which has a direct and potentially serious effect on the health and safety of the occupants." *Id.* at 2. In contrast, Class 4, "pattern and practice violations," are "those wherein the evaluator shows a pattern and practice of behavior detrimental to the program or contrary to professional conduct." *Id.* at 3. "This could include . . . an excessive number of founded complaints, which may or may not qualify for Class 1 or Class 2 violations, but which show a lack of care in completing the reports according to the Evaluator Guidelines or in conformance with Chapter 189 . . . ." *Id.* Like the language of chapter 310, the TISH Guidelines state that the enumerated "penalties are presumed to be appropriate for every case," but that the board may depart from the presumptive penalties for "substantial and compelling reasons," so long as the board "provide[s] written reasons that specify why the penalty selected was more appropriate." *Id.*

Here, the legal basis for the board's cancellation of relator's license is not clearly stated in the board's written decision. Finding seven comes closest to stating the explicit legal authority on which the board's decision is based, stating:

> The TISH Board's disciplinary *procedure* was adopted based on Saint Paul Legislative Code Chapter 310, Uniform License Procedures. It provides that for a fourth violation resulting in adverse action the Board may impose any of the following penalties: revocation or suspension of the TISH license for a fixed period of time, refusal to renew the TISH license, or cancellation of the TISH license permanently. These guidelines are consistent with Saint Paul

Legislative Code Chapter 310.05(m)(2) ..., which provides that the presumptive penalty for a fourth violation is revocation.

(Emphasis added.)

Finding seven is unclear. It invokes the "Board's disciplinary procedure[s]," but it incorrectly describes the content of those procedures by stating that chapter 310's presumptive-penalty scheme "provides that for a fourth violation resulting in adverse action the board may ... cancel[ ][a] TISH license permanently." Although the board's disciplinary procedures and guidelines for disciplinary action do not contain a parallel provision, the board's guidelines for disciplinary action do state that when an evaluator "[h]as been the subject of substantiated complaint(s)" or "[h]as demonstrated a pattern of incompetency," the presumptive penalty for a Class 4 violation is cancellation of the evaluator's license. TISH Guidelines at 1. A Class 4 violation includes "an excessive number of founded complaints." *Id.* at 3.

It is unclear what legal authority the board relied on for its decision, but we conclude that it is logical to read the decision as invoking the guidelines' standards and presumptive scheme, as opposed to the scheme in chapter 310. Finding one supports this conclusion by emphasizing the recurring complaints filed against relator. The board's closing statement that it canceled relator's license due to "the long-term repetitive nature of the violations of [relator]" also supports our interpretation of the board's decision. The board's findings include eight substantiated complaints of report inconsistency and another substantiated complaint involving misconduct.

Thus, the board's determination, though unclearly expressed, is not outside the disciplinary guidelines.

Relator argues that because he only appeared before the city council and adverse action was taken on two previous occasions, the board's decision was legally erroneous.[4] Relator's argument assumes that the board was limited by SPLC chapter 310 in penalizing relator. But the SPLC delegates to the board the authority to develop and enforce evaluator guidelines, and, accordingly, the board was permitted to take adverse action pursuant to TISH Guidelines. Relator does not appear to challenge the adoption of the guidelines themselves and does not argue that the guidelines are subject to the scheme in chapter 310. We also note that the board's "[d]etermination" emphasized the "serious nature" of relator's violations, the "long-term repetitive nature" of the violations, relator's "ongoing misunderstanding of the TISH program and its mission," and that relator was on probation at the time of the inspection at issue. Even if the board's decision were based on chapter 310 of the SPLC, these considerations provide "substantial and compelling reasons" to depart from the presumptive penalty.

Because we interpret the board's decision to be based on the TISH Guidelines, and the guidelines contain sufficient legal authority for the board's action, we conclude that the board did not exceed its authority in terminating relator's license.

### B. *Writing Requirement*

 Next, relator argues that cancellation of his license must be reversed be-

---

4. Relator correctly argues that the board only took adverse action, and relator only appeared before the city council, on two prior occasions. Finding one states that there are three prior hearings before the board. But

because we interpret the board's decision as based on its disciplinary guidelines, and not chapter 310, we conclude that the board's factual error as to the number of prior hearings is not prejudicial.

cause the board's decision was based on a telephone complaint. TISH Bylaws state that "[a] complaint must be in writing." St. Paul, Minn., Truth–in–Sale of Housing Board Bylaws art. IX, § 3 (adopted Apr. 17, 2002) [hereinafter "TISH Bylaws"]. Relator contends that because the initial homeowner complaint was made by telephone and reduced to writing by a TISH administrator, the license cancellation was improper. The city construes "complaint" as a written complaint used to place an evaluator on notice of possible adverse action and asserts that city employees can lodge a complaint.

TISH Bylaws provide that "[t]he complain[ant] must [either] ... directly represent[ ] the ... buyer or the seller of the dwelling ... or ... [be] employed by, or directly represent[ ], the City of Saint Paul." TISH Bylaws contemplate city employees as complainants, and because complaints must be in writing, the TISH Bylaws contemplate that, in some cases, a city employee will write a complaint. We conclude that the city's interpretation of the TISH Bylaws is reasonable and entitled to deference. Moreover, the primary purpose of the writing requirement is to put evaluators on notice of the basis for complaints filed against them. Here, relator cannot show that he was prejudiced by the city's reduction of the telephonic complaint to writing or that he was inadequately notified of the underlying complaints.

### C. Staleness of Disclosure Report

Relator also argues that his report, which was the subject of the complaint and constitutes the basis of the board's decision, was stale and could not be the basis for sanctions against him. SPLC § 189.02(a) (2004) states: "A disclosure report is valid for three hundred sixty-five (365) consecutive days from the date of its issuance." SPLC § 189.02(a). Relator argues that because the April 2004 report was over a year old at the time it was investigated, the report was "invalid" and could not form the basis of a violation. But relator's interpretation of the provision ignores the entirety of section 189.02 and surrounding sections of chapter 189. For instance, section 189.02(d) (2004) provides: "The report is valid *for only one sale* during its three hundred sixty-five (365) consecutive day lifetime." (Emphasis added.) Section 189.03 (2004) uses the term "valid" five times and suggests that the drafters' intention was to require individuals selling homes to obtain a new disclosure report every year. The language of section 189.02 does not support a reading that would insulate any deficient disclosure report from becoming the basis of a complaint against an evaluator as soon as a year had expired. It is not a statute of limitations for relator's responsibilities. We conclude that the board did not err in basing its action on relator's 2003 and 2004 disclosure reports.

### III.

The next issue is whether the city's decision to cancel relator's license is supported by substantial evidence. Substantial evidence is: "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; and (5) evidence considered in its entirety." *CUP Foods, Inc., v. City of Minneapolis,* 633 N.W.2d 557, 563 (Minn. App.2001), *review denied* (Minn. Nov. 13, 2001). Substantial judicial deference is given to administrative fact-finding. *Id.* Relator has the burden to prove that a decision is unsupported by substantial evidence. *Id.*

Although relator contests each of the board's seven findings, he only challenges the sufficiency of the evidence to support findings three through six.

### A. Findings 3 and 4

 Relator challenges findings three and four, arguing that no substantial evidence supports the findings that his April 2004 evaluation improperly reported the condition of the electrical service drop and the plumbing system.

With respect to the electrical service drop, the board's findings were based on the testimony of a code-enforcement inspector and the homeowner, in addition to documentary evidence, which included the repairman's notes and the inspector's photographs. The homeowner testified that the electrical service drop was in the same condition at the time of the inspection as when she bought the home, and the inspectors testified that it did not comply with city code. Relator suggests that because of the significant time between his evaluation and the code-enforcement inspection, the electrical service mast must have been damaged in the interim time period, following his evaluation. But the board did not find relator's theory credible, and relator offered no direct evidence to support his position.

With respect to the basement plumbing issues, the city offered the testimony of the homeowner and an inspector, photographs, and the plumbing-repair estimate. This evidence established that the basement waste piping was not sealed properly, that improper material was used for the main waste line, that there was visible waste on the outside of that line, and that relator's evaluation was not consistent with the city code. Relator asserts that the problems with the basement plumbing were not visible in April 2004. But relator's earlier report clearly noted some of the plumbing problems, which suggests that the problems were visible at the time of relator's second inspection. Moreover, relator offered no direct evidence to show that the problems cited in the complaint were not visible or arose in the interim period. On this record, we conclude that findings three and four are supported by substantial evidence.

### B. Findings 5 and 6

Relator argues that there is no substantial evidence to support findings five and six, which state that relator violated the evaluators' code of ethics by treating the homeowner disrespectfully and videotaping against her wishes. Relator also asserts that there is no substantial evidence to support the finding that he violated the evaluators' code of ethics by facilitating the call in which a woman claimed to be from the city attorney's office.

The code of ethics proscribes professional and behavioral misconduct, stating: "The evaluator, while acting as such, will not engage in conduct that in any way is in violation of any law or ordinance, or is in contravention of good order and decorum." St. Paul, Minn., Code of Ethics for Truth-in-Sale of Housing Evaluators (2003). The record is clear that relator videotaped inside of the home against the homeowner's express wishes. At the time of the videotaping incident, relator was in the home in his capacity as a TISH evaluator so that code-enforcement inspectors could give him notice of the deficiencies in his prior report. The homeowner testified that she had asked relator not to videotape inside the home, and the code inspector's report of the inspection corroborates this request. Yet, relator introduced the videotape into evidence and clearly established his noncompliance with the request. Relator testified that he did not know the camera was on, but the board did not

credit his testimony. Furthermore, the homeowner's letter dated August 2, 2005, indicates that relator was disrespectful, angry, and abrupt with her.

 There is also circumstantial evidence supporting the finding that relator facilitated the false and harassing phone call allegedly from the city attorney's office. The written complaint indicates that the day before relator was scheduled to view the home with the inspectors, the homeowner received a phone call from "Susan Brown," allegedly from the city attorney's office. The homeowner received this call about ten minutes after relator called to attempt to settle the dispute privately. The female caller asked explicitly about the dispute with relator and elicited information about an inspection performed by another firm. The following day, relator asked the homeowner about the other inspection. The homeowner testified that relator would have had no way of knowing of the other inspection had he not been privy to the offending phone call. Finally, the city introduced evidence that the city attorney's office did not employ an individual named Susan Brown. We do not reweigh conflicting evidence or re-judge the credibility of testimonial evidence. Based on the foregoing evidence, we conclude that findings five and six are supported by substantial evidence.

## IV.

 Finally, relator argues that cancellation of his TISH license was arbitrary and capricious. A decision is arbitrary and capricious only if the decision-making body: "(1) . . . relied on factors not intended by the ordinance; (2) entirely failed to consider an important aspect of the issue; (3) offered an explanation that conflicts with the evidence; or" (4) arrived at a decision that "is so implausible that it could not be explained as a difference in view or the result of the city's expertise." *Rostamkhani,* 645 at 484.

Relator's arbitrary-and-capricious argument is not well developed and is based on little more than assertion. He has not shown that the TISH board or the city council relied on factors not intended by the city code or that either decision-making body failed to consider the merits of the dispute. Also, relator has not shown that the board or city council decisions are without substantial evidentiary support based on the entire record.

## DECISION

Because the city's decision did not violate relator's right to procedural due process, was not based on error of law, is supported by substantial evidence, and was not arbitrary and capricious, we affirm.

**Affirmed.**