*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0405**

In the Matter of all Licenses Held by Pet Motortech, Inc.,
d/b/a Pet Auto Repair, for the premises at
44 Acker Street in St. Paul, Minnesota.

**Filed February 1, 2016
Affirmed
Randall, Judge***

St. Paul City Council
File No. OAH 8-6020-31892

Marcus L. Almon, St. Paul, Minnesota (for relator Pet Motortech, Inc.)

Samuel J. Clark, St. Paul City Attorney, Geoffrey S. Karls, Assistant City Attorney, St. Paul, Minnesota (for respondent St. Paul City Council)

Considered and decided by Cleary, Chief Judge; Stauber, Jr., Judge; and Randall, Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**RANDALL**, Judge

Relator challenges respondent-city's suspension of its business licenses, arguing that there was not substantial evidence to demonstrate that relator violated the conditions of its business licenses, the city acted arbitrarily and capriciously by imposing a fine, and the city improperly imposed a penalty. We affirm.

## FACTS

Relator Pet Motortech, Inc. d/b/a Pet Auto Repair (Pet Auto) operates an automotive-repair business on two adjacent parcels located at 18 Acker Street East and 44 Acker Street East in St. Paul. Pet Auto holds an auto-repair-garage license, second-hand-dealer license, and paint-shop license. Pet Auto's business licenses were subject to numerous conditions, including: no exterior storage of tires; all auto-repair work must occur within an enclosed building; and no painting of vehicles or "any other kind [of] painting activity on the premises" unless and until a paint booth had been installed under permit and inspected and approved by city-inspection staff.

On September 26, 2014, respondent City of St. Paul notified Patrick Takuanyi, President of Pet Auto, of its intent to impose a penalty and suspend all licenses held by Pet Auto. The city stated that, despite the fact that Takuanyi was repeatedly warned by city inspectors, Pet Auto had violated the conditions of its business licenses by storing tires outside and painting vehicles.

An evidentiary hearing was held before an administrative-law judge (ALJ). Pet Auto was represented by counsel. On December 8, the ALJ issued his findings of fact, conclusions of law, and recommendation. The ALJ concluded that, from May 2014 through September 2014, Pet Auto engaged in a pattern of conduct of failing to comply with the city's business-licensing laws. The ALJ found that during the spring and summer of 2014, vehicles had been painted at Pet Auto, and that, despite Pet Auto receiving a warning in May from the city directing the removal of dozens of old tires stacked outside the repair shop, some of the tires remained stored outside as of late August. The ALJ determined that there were substantial and compelling reasons supporting an upward departure from the presumptive sanction based on Pet Auto's pattern of noncompliance, and recommended that the city impose a $2,000 penalty and 10-day suspension of operations.

About one month later, the city council held a public hearing to discuss the ALJ's recommendation. Both the assistant city attorney and Takuanyi appeared at the hearing. The assistant city attorney requested that the city council impose a $2,400 fine against Pet Auto in order to cover administrative costs related to the evidentiary hearing. The council unanimously passed a resolution adopting the ALJ's findings of fact, conclusions of law and recommendations after considering the record evidence. The council imposed a $2,000 penalty, 10-day suspension, and $2,400 fine against Pet Auto.

This certiorari appeal follows.

3

**D E C I S I O N**

A city council's "action is quasi-judicial and subject to certiorari review if it is the product or result of discretionary investigation, consideration, and evaluation of evidentiary facts." *Staeheli v. City of St. Paul*, 732 N.W.2d 298, 303 (Minn. App. 2007) (quotation omitted). We review a city's quasi-judicial decision under a "limited and nonintrusive standard of review." *Sawh v. City of Lino Lakes*, 823 N.W.2d 627, 635 (Minn. 2012) (quotation omitted). "Under that standard, we may not substitute our own findings of fact for those of a city, or engage in a de novo review of conflicting evidence." *Id.* We will affirm a city's decision if it "has explained how it derived its conclusion and [the city's] conclusion is reasonable on the basis of the record." *Id.* (alteration in original) (quotation omitted).

## I. Substantial evidence supports the city's findings.

"Generally, decisions of administrative agencies, including cities, enjoy a presumption of correctness and will be reversed only when they reflect an error of law or where the findings are arbitrary, capricious, or unsupported by substantial evidence." *CUP Foods, Inc. v. City of Minneapolis*, 633 N.W.2d 557, 562 (Minn. 2001), *review denied* (Minn. Mar. 13, 2001). Substantial evidence is: "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; and (5) evidence considered in its entirety." *Id.* at 563. "We defer to the [city's] fact-finding process and it is the challenger's burden to establish that the findings are not supported by the evidence." *Id.* The city council may take adverse action against a licensee who fails to comply with

4

any condition set forth in the license or engages in a pattern or practice of conduct of failure to comply with laws reasonably related to the licensed activity. St. Paul, Minn., Legislative Code (SPLC) § 310.06(b)(5)(6)c (2006).

Pet Auto first disputes the city's finding that a vehicle was painted on the premises on or shortly before May 27. At the hearing, an inspector for the City of St. Paul department of safety and inspections testified that, on the day in question, he inspected Pet Auto and observed a newly-painted vehicle on the premises. The inspector testified that Takuanyi told him that a former employee had painted the vehicle in the building. Takuanyi disputed the inspector's version of events and testified that the vehicle, which was a Nissan Maxima, had been painted at a nearby auto-repair shop. In support of his defense, Takuanyi pointed to a billing invoice for the paint job of the Nissan Maxima, as well as five other invoices for similar vehicle-painting transactions from the other auto-repair shop.

The ALJ found Takuanyi's testimony and the billing invoices to lack credibility, noting that the dates of the completed paint jobs did not correlate with the sequential numbering of the billing invoices from the auto-repair shop. And Takuanyi could not explain the gaps in time between the invoice-billing dates and the completion of the paint jobs.

The ALJ credited the testimony of the city inspector over Takuanyi, and we defer to a factfinder's determination regarding credibility. *Sigurdson v. Isanti Cty.,* 386 N.W.2d 715, 721 (Minn. 1986). Where there is conflicting evidence or more than one inference may be drawn from the evidence, findings will be upheld. *City of Minneapolis v.*

*Richardson*, 307 Minn. 80, 88, 239 N.W.2d 197, 202 (1976). Takuanyi's contrary explanation and evidence does not overcome the substantial evidence in the record supporting the ALJ and the city council's findings and conclusions. We also note that on appeal, Takuanyi does not dispute record evidence demonstrating that on September 13, he painted a Mazda Protégé on the premises, which violated the conditions of his business license.

Pet Auto next argues that the city erred in concluding there was substantial evidence to demonstrate he violated his business license by improperly storing tires outside. Again, there is substantial evidence in the record to demonstrate that Pet Auto repeatedly failed to comply with the conditions set forth in its business license by improperly storing tires outside. The inspector testified that, in May, he observed approximately 100-200 tires stored alongside the building on the property. The inspector took photographs of the tires, which were admitted into evidence. The inspector's notes documenting his licensing-related interactions with Pet Auto reflect that, when he revisited Pet Auto in late August, he observed approximately 40 tires stored on the west side of the building at 18 Acker Street East. Takuanyi did not dispute the fact that there were numerous tires stored outside of the building on May 27, but testified that all of the tires had since been removed. Viewing the record as a whole, there is substantial evidence supporting the city's suspension of Pet Auto's business license based on its continued noncompliance with its license conditions.

**II.     The city did not arbitrarily and capriciously impose a fine.**

Pet Auto contends that the city's imposition of the $2,400 fine was arbitrary and capricious because there were no findings of the costs associated with the evidentiary hearing, and that the city did not request or recommend the fine before the ALJ.

"An agency decision is arbitrary and capricious if it is an exercise of the agency's will, rather than its judgment, or if the decision is based on whim or is devoid of articulated reasons." *CUP Foods, Inc.*, 633 N.W.2d at 565. When there may be more than one opinion on a matter, the agency's choice of one course of action is not arbitrary and capricious. *Id.*

SPLC § 310.05(k) (2013) authorizes the city council to impose upon a licensee some or all of the costs of a contested hearing in any given case "if the position, claim or defense of the licensee was frivolous, arbitrary, or capricious." Here, the city council articulated grounds for imposing the $2,400 fine on Pet Auto. In October 2014, the city put Pet Auto on notice that it would seek the costs of the evidentiary hearing "[d]ue to the clear nature of the violation." At the city council hearing, the assistant city attorney requested $2,400 to cover the costs associated with the evidentiary hearing, and the city council fined Pet Auto the exact requested amount.

On appeal, Pet Auto does not present any authority for its argument that the city must detail all of its associated legal and administrative costs arising from the evidentiary hearing. The relevant legal standard is that the city council does not act arbitrarily or capriciously when it imposes the fine. *CUP Foods*, *Inc.*, 633 N.W.2d at 565. Here, we conclude that the city council acted within its discretion.

7

**III.    The city properly assessed the penalty.**

Pet Auto challenges the $2,000 penalty assessed by the city, arguing that the city erred in attributing the first adverse action for failing to pay its license-renewal fee for 18 Acker Street East to impose a presumptive penalty for a second adverse action for violations of its business license at its 44 Acker Street East premises.  Pet Auto contends that the consolidation of its business licenses extinguished its license for 18 Acker Street East.  Therefore, it argues the first adverse action never applied to its business license at 44 Acker Street East.

The record reflects that, in the spring of 2014, Pet Auto received its first adverse action when the city imposed a $500 fine for Takuanyi's failure to timely renew his business license at the 18 Acker Street East premises.  *See* SPLC § 10.01 (2012).  Payment of a fine is considered an "appearance" for the purpose of determining presumptive penalties for subsequent violations.  SPLC § 310.05(m)(i)A (2013).  On August 26, after Takuanyi paid the late fee, the city consolidated Takuanyi's business licenses.  There is no evidence that, by consolidating the two business licenses, any of Pet Auto's business licenses were extinguished.

The city's legislative code provides a matrix of penalties according to the type of violation and the licensee' history of violation.  *Id.* (m) (2013).  The council may increase the penalty if the licensee has one or more prior appearances.  *Id.*  The presumptive penalty for violating the SPLC relating to licensed activity on a second appearance is a $1,000 penalty.  *Id.*  However, the council may depart from the presumptive penalty when it "finds

8

and determines that there exist substantial and compelling reasons making it more appropriate to do so." *Id.*

Pet Auto cites no authority for its claim that the first adverse action should not apply in the instant case. As the licensee, Pet Auto knew of its failure to timely pay its business license, that it was an adverse action, and that it constituted a first appearance. The record demonstrates that Pet Auto repeatedly failed to comply with the conditions of his business licenses despite receiving multiple warnings from the city. We conclude the city acted within its discretion in imposing a $2,000 penalty against Pet Auto.

**Affirmed**.