*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0259**

In the Matter of the Denial of the Application of Kathleen Smith
for MSRS General Employees Retirement Plan Total
and Permanent Disability Benefits.

**Filed January 26, 2026
Affirmed
Bond, Judge**

Minnesota State Retirement System
File No. 5161365308

Denise Y. Tataryn, Nolan, Thompson, Leighton & Tataryn, PLC, Hopkins, Minnesota (for relator Kathleen Smith)

Keith Ellison, Attorney General, Frank Langan, Assistant Attorney General, St. Paul, Minnesota (for respondent Minnesota State Retirement System)

Considered and decided by Connolly, Presiding Judge; Larson, Judge; and Bond, Judge.

**NONPRECEDENTIAL OPINION**

**BOND**, Judge

Relator Kathleen Smith appeals the decision of the board of directors (the board) of respondent Minnesota State Retirement System (MSRS) denying Smith's application for total and permanent disability benefits. Smith argues that the board's decision is not supported by substantial evidence and the board breached its fiduciary duty. We affirm.

**FACTS**

In February 2019, Smith was involved in a car accident. As a result of the accident, Smith's doctor diagnosed her with post-concussion syndrome. The Minnesota Department of Natural Resources (DNR), where Smith had worked as an acquisition and development grant manager since 2005, placed Smith on an unpaid leave of absence because her injuries prevented her from performing her job duties. In October 2019, Smith applied for total and permanent disability retirement benefits from MSRS.[1] MSRS denied Smith's application.

In March 2022, Smith reapplied for total and permanent disability benefits. As part of her application, Smith submitted physician statements from a certified nurse practitioner, a psychiatrist, and her primary care doctor. All three providers checked the box on the

---

[1] The procedure for applying for total and permanent disability benefits is set forth in Minn. Stat. §§ 352.01, .03, .113, 356.96 (2024). An employee making a claim for total and permanent disability benefits must file an application form and supporting documents, including two medical statements and a written certification by the employing entity stating that "there is no available work that the employee can perform with the disabling condition and that all reasonable accommodations have been considered." Minn. Stat. § 352.113, subds. 2(a), (b), 4(d). If MSRS denies the application, the applicant may appeal to MSRS's executive director. Minn. Stat. § 356.96, subd. 2. If the executive director affirms MSRS's denial of the application, the applicant may petition for review by the board. *Id.*, subd. 5. Before the board hears the applicant's appeal, the executive director "may direct the [applicant] to participate in a fact-finding conference" before an administrative-law judge (ALJ), who then issues a report and recommendation to the board. *Id.*, subd. 7(b). The board will hold a hearing with the applicant and an MSRS representative and determine "on the record as submitted and on the proceedings of the hearing" whether to uphold or reverse the executive director's decision to deny the application. *Id.*, subd. 10(a). If the board denies the application for total and permanent disability benefits, the applicant may appeal to this court via writ of certiorari. *Id.*, subd. 13; Minn. Stat. § 606.01 (2024); Minn. R. Civ. App. P. 115.

application form stating that Smith was totally and permanently disabled, but, in other respects, their opinions differed.

Certified nurse practitioner (CNP) Gwendolyn Kosevich noted on the physician statement that "we are not experts in determining disability" and "disability assessment [was] pending." CNP Kosevich opined that Smith would "only likely be able to perform simple tasks in a quiet environment" because she "has trouble with focus." On the psychiatric facilities chart, CNP Kosevich stated Smith had "marked" levels of impairment in two of the eight psychiatric categories, "moderate" impairment in two categories, and "slight" impairment in one category. CNP Kosevich did not rank the remaining three categories.

Psychiatrist Dr. Chhabi Lall Timsina Sharma listed "adjustment disorder with anxiety [and] depressed mood" and "MVA [motor vehicle accident] with concussion symptoms" as Smith's "primary disabling condition." Dr. Sharma stated that Smith had "ongoing cognitive impairment." At the top of the psychiatric capabilities chart, Dr. Sharma wrote, "defer to PMR."[2] Dr. Sharma stated Smith had "marked" levels of impairment in seven of the eight psychiatric categories and "moderate" impairment in the remaining category.

Smith's primary care physician, Dr. Sarah Mazig, listed "mild TBI/post-concussion syndrome, MVA" as Smith's "primary disabling condition." Dr. Mazig opined that Smith would "only likely be able to perform simple tasks in a quiet environment" due to her "mild

---

[2] It appears from the record that PMR stands for Physical Medicine and Rehabilitation. CNP Kosevich is a PM&R specialist.

impairment with processing speed, attention and executive functioning." On the psychiatric capabilities chart, Dr. Mazig stated that Smith had "slight," "mild," or "subtle" levels of impairment in most psychiatric categories, no impairment in one category, and "moderate" levels of impairment in the remaining categories. Dr. Mazig did not find that Smith had "marked" levels of impairment in any category.

Following the submission of Smith's application, MSRS ordered an independent medical examination (IME) by Dr. Orrin Mann. Dr. Mann conducted a physical examination of Smith and his report stated his opinion focused solely on Smith's "physical functionality." However, much of Dr. Mann's report discussed Smith's cognitive abilities. Dr. Mann wrote that Smith's "cognitive abilities were dramatically worse than I would have expected for someone with her educational background . . . [and] professional experience" and he opined that Smith was not exaggerating her symptoms. Dr. Mann stated that Smith had "subtle to mild cognitive deficits," but that he would "defer to the appropriate experts with respect to specific mental accommodations, restrictions, and limitations that such deficits would require." Dr. Mann concluded that, based on his physical examination of Smith and his review of Smith's medical records, Smith was not physically totally and permanently disabled and would be "able to perform any form of employment on a full-time basis . . . , provided that accommodations can be made for cognitive deficits."

MSRS also ordered an independent psychiatric examination (IPE) by Dr. Joseph Burgarino. Dr. Burgarino determined that Smith had normal "[a]ttention and concentration functions" and "[i]mmediate recall, short-term, intermediate, and long-term memory

4

functions." Dr. Burgarino found Smith's thought processes to be "cogent and goal directed." Dr. Burgarino concluded that Smith had not presented any "objective medical evidence" that she suffered from "any neuropsychiatric/psychiatric nor neurologic disorder that would result in any disability and certainly none that would meet the test of producing total and permanent disability."

Following the IME and IPE, MSRS's medical advisor, Managed Medical Review Organization (MMRO), recommended that MSRS deny Smith's application. MSRS staff adopted the recommendation and MSRS's executive director affirmed. In denying Smith's application, the executive director clarified that "the standard for a disability benefit is not whether Ms. Smith is able to work in her former occupation for the [DNR], but whether she is able to engage in any substantial gainful activity." The executive director concluded that Smith failed to demonstrate that she is unable to engage in any substantial gainful activity because two of Smith's own providers stated in their physician statements that Smith could perform simple tasks in quiet environments.

Smith submitted a petition for review to the board and the board ordered a fact-finding conference before an ALJ. The ALJ issued findings of fact, conclusions of law, and a recommendation that the executive director's decision be affirmed because Smith failed to establish her eligibility for total and permanent disability benefits. The ALJ's decision was based on three main determinations: (1) Smith failed to provide detailed reports from medical providers "objectively demonstrating her disabling condition prevented her from substantial gainful activity"; (2) Smith "failed to provide a report from her employer—the DNR—indicating that there is no available work that [Smith] can

perform with her disabling condition and that all reasonable accommodations have been considered";[3] and (3) the medical providers had different medical opinions about the severity of Smith's symptoms and did not consider Smith's vocational ability.

Given the lack of vocational data in the record, the ALJ recommended that the executive director order a vocational assessment before the board made its final determination. The executive director agreed, and a rehabilitation counselor at MMRO subsequently conducted a vocational assessment of Smith. The rehabilitation counselor relied solely on the IME and IPE results in determining suitable jobs for Smith, and did not consider Smith's alleged cognitive impairments in finding potential employment opportunities because Dr. Mann and Dr. Burgarino had concluded that Smith's medical records and physician statements did not support any restrictions beyond light or sedentary work. The rehabilitation counselor found three available employment positions commensurate with Smith's "current qualifications and transferable skills" within a 50-mile radius of Smith's residence. The rehabilitation counselor opined that Smith could perform these roles because they were all sedentary desk positions that "[fell] within [Smith's] capabilities" including her "education, training, experience, and skills." The vocational assessment ultimately determined that a denial of total and permanent disability benefits was vocationally supported.

---

[3] Smith's application contained an employer-certification form from her prior application. The ALJ focused on the absence of required information in the employer certification, including the lack of availability of work and reasonable accommodations. As Smith recognizes, however, the board explicitly stated it was not rejecting Smith's disability-benefits application on this basis. Accordingly, we do not consider the effect of any defect in Smith's employer-certification form.

6

Following a hearing, the board adopted the ALJ's findings of fact and rejected Smith's application on a vote of 5-3.

This certiorari appeal follows.

## DECISION

"We review a decision of the MSRS [b]oard as we would any administrative agency decision." *In re Ret. Benefits of Yetka*, 554 N.W.2d 85, 88 (Minn. App. 1996).

> On certiorari appeal from a quasi-judicial agency decision not subject to the Administrative Procedure Act, we examine the record to review questions affecting the jurisdiction of the agency, the regularity of its proceedings, and, as to the merits of the controversy, whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it.

*Anderson v. Comm'r of Health*, 811 N.W.2d 162, 165 (Minn. App. 2012) (quotation omitted), *rev. denied* (Minn. Apr. 17, 2012). Under this standard, an agency must support its quasi-judicial decision with "substantial evidence." *See Am. Fed'n of State, Cnty. & Mun. Emps., Council No. 14 v. County of Ramsey*, 513 N.W.2d 257, 259 (Minn. App. 1994) (quotation omitted); *see also Anderson*, 811 N.W.2d at 165 (allowing appellate review for whether an agency decision is "without any evidence to support it" (quotation omitted)). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"; "more than a scintilla of evidence"; "more than 'some evidence'"; "more than 'any evidence'"; and "evidence considered in its entirety." *Am. Fed'n*, 513 N.W.2d at 259 (quoting *Rsrv. Mining Co. v. Herbst*, 256 N.W.2d 808, 825 (Minn. 1977)). The burden is on the applicant to establish that the board's decision is

unsupported by substantial evidence in the record. *Staeheli v. City of St. Paul*, 732 N.W.2d 298, 310 (Minn. App. 2007). Upon review, "we will not retry facts or make credibility determinations" and will affirm the agency's decision so long as the agency provided a "legal and substantial basis for the action taken." *Id.* at 303 (quotation omitted).

I. **The board's decision denying Smith's application for total and permanent disability benefits is supported by substantial evidence.**

Smith argues that the board's decision that she failed to prove by a preponderance of the evidence that she is totally and permanently disabled is not supported by substantial evidence. "Total and permanent disability" is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has existed or is expected to continue for a period of at least one year." Minn. Stat. § 352.01, subd. 17. "Substantial gainful activity" is not defined by the statute, although MMRO has adopted criteria to help determine an applicant's ability to engage in substantial gainful activity, including: (1) medical-expert and vocational-specialist opinions on work ability; (2) whether the applicant is performing or able to perform pre-disability employment or other employment; (3) the applicant's current qualifications and transferable skills; (4) available jobs consistent with the applicant's qualifications and skills within a certain location; (5) the applicant's post-disability earning potential relative to education level, transferrable skills, and employability; and (6) whether the applicant can work at least 20 hours a week. The criteria also state that "Social Security Disability

Insurance (SSDI) determinations regarding substantial gainful activity are not determinative because they give significant weight to pre-disability earnings."[4]

Here, the board reviewed the entire record—including Smith's medical records, the IME, the IPE, MMRO's recommendation, and the physician statements from CNP Kosevich, Dr. Mazig, and Dr. Sharma—and concluded that Smith failed to prove by a preponderance of the evidence that she is totally and permanently disabled. The board's determination that Smith is not totally and permanently disabled because she had not proven that she was unable to engage in any substantial gainful activity for at least one year relied, in part, on the following evidence. Two of the health-care professionals who submitted physician statements in support of Smith's application, CNP Kosevich and Dr. Mazig, stated that Smith could "perform simple tasks in a quiet environment." All three health-care professionals who submitted physician statements on Smith's behalf expressed "considerable disagreement" on Smith's cognitive abilities on the psychiatric-capabilities chart. Additionally, CNP Kosevich noted on the physician statement that "we are not experts in determining disability"; Dr. Mann opined that Smith would be "able to perform any form of employment on a full-time basis . . . , provided that accommodations can be made for cognitive deficits"; and Dr. Burgarino concluded that there was "no objective medical evidence to support" a conclusion that Smith had a cognitive disability. Finally, the vocational report determined that there were available employment positions

---

[4] Smith applied for, and was granted, SSDI benefits after an ALJ concluded that Smith's impairments significantly limited her ability to perform basic work activities. The board considered this evidence during its hearing.

9

Smith could perform within "her current level of restrictions." We conclude that substantial evidence in the record supports the board's determination to deny Smith's application for total and permanent disability benefits. *See* Minn. Stat. § 356.96, subd. 10(a).

Smith contends that she provided evidence to support her claim that she is totally and permanently disabled. We recognize that the three health-care professionals who submitted physician statements on Smith's behalf opined that she is totally and permanently disabled. We also acknowledge Smith's arguments that the IME, IPE, and vocational assessment contained certain errors. For example, Dr. Mann commented extensively on his observations of Smith's cognitive impairments yet based his conclusion that Smith was not totally and permanently disabled solely on Smith's physical capabilities. Dr. Burgarino stated there was no "medical evidence in the medical records as provided and described that Ms. Smith ever underwent comprehensive neuropsychological testing," despite Smith's medical records containing a 2021 neuropsychological evaluation. And the vocational assessment considered Smith's physical limitations but not her cognitive limitations in assessing potential employment. The board acknowledged these errors but nonetheless concluded that Smith had failed to meet her burden of proof. Significantly, the board determined that, even if it did not consider the IME and IPE results, Smith still failed to prove that she is unable to engage in substantial gainful activity because her own providers stated that she is capable of performing "light or sedentary work" and "simple tasks in a quiet environment."

Ultimately, the question on appeal is not whether Smith presented evidence that she is totally and permanently disabled. Rather, the question is whether there is "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion" that Smith did not meet her burden of proof. *See Am. Fed'n*, 513 N.W.2d at 259 (quotation omitted). Here, the board reviewed the entire record, recognized that Smith suffered injuries because of her car accident that impacted her ability to perform the duties required by her previous position with the DNR, and addressed Smith's claim that the IME and IPE contained errors. The board determined that Smith's own health-care providers disagreed about the severity of her cognitive impairments, and the IME, IPE, and vocational assessments concluded that Smith was not permanently and totally disabled. When reviewed as a whole, the record contains substantial evidence supporting the board's decision to deny Smith's application for total and permanent disability benefits because Smith failed to prove by a preponderance of the evidence that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has existed or is expected to continue for a period of at least one year." Minn. Stat. § 352.01, subd. 17.

## II. Smith's breach-of-fiduciary allegations do not establish a basis to reverse the board's decision.

Smith argues that the board breached its fiduciary duties by failing to address the deficiencies in the IME and IPE reports and by "fail[ing] to provide any oversight over what the vocational consultant should address." The board contends that Smith failed to

11

preserve this issue for appeal. Assuming without deciding that Smith's fiduciary-duty argument is properly before us, Smith's argument is unavailing.

Members of the board, along with MSRS's executive director, are fiduciaries. Minn. Stat. §§ 356A.02, subd. 1(1)-(2), .04 (2024). The board must "provide authorized benefits to plan participants" and do so "faithfully, without prejudice, and in a manner consistent with law." Minn. Stat. § 356A.05(a)(1), (b) (2024). Smith points to no authority supporting her claim that the board had a duty to "take corrective action" when notified about the errors in Dr. Mann's and Dr. Burgarino's reports. In fact, in its decision denying Smith's application, the board acknowledged the reports' errors and stated that, even without the evidence from the IME and IPE reports, it would have denied Smith's application.

Similarly, Smith identifies no authority permitting the board to oversee the vocational assessment, which must be independently "conducted by a qualified rehabilitation counselor under contract with the covered pension plan." Minn. Stat. § 356.96, subd. 7(c); *see also* Minn. Stat. § 352.113, subd. 4a. While the board had discretion to resubmit Smith's application back to MMRO for reconsideration with instructions that "further medical examinations be obtained," Minn. Stat. § 356.96, subd. 11, the board discussed this option and concluded such a step was unnecessary because there was no "new medical evidence for [MMRO] to consider." On this record, Smith's claim that the board breached its fiduciary duty fails to establish a basis for this court to reverse the board's decision. *See Anderson*, 811 N.W.2d at 165 (providing that, on review of an agency decision, appellate courts "examine the record to review questions

12

affecting the jurisdiction of the agency, the regularity of its proceedings, and, as to the merits of the controversy, whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it" (quotation omitted)).

**Affirmed.**