*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RAKESH NAYYAR, Personal Representative of the
ESTATE OF BIMLA NAYYAR,

        Plaintiff-Appellant,

v

OAKWOOD HEALTHCARE, INC., doing business
as OAKWOOD HOSPITAL & MEDICAL
CENTER,

        Defendant-Appellee.

UNPUBLISHED
March 23, 2023

No. 360257
Wayne Circuit Court
LC No. 13-009819-NH

Before: RICK, P.J., and SHAPIRO and LETICA, JJ.

PER CURIAM.

In this medical malpractice action, plaintiff, Rakesh Nayyar, as personal representative of the estate of Bimla Nayyar, appeals as of right the trial court's January 21, 2022 order entering judgment notwithstanding the verdict (JNOV) in favor of defendant, Oakwood Healthcare, Inc., doing business as Oakwood Hospital & Medical Center. We vacate the trial court's order and remand for entry of a judgment in favor of plaintiff consistent with the jury's verdict, with damages subject to reduction by the trial court in accordance with MCL 600.6304(5).

## I. BACKGROUND

On January 9, 2012, the decedent, Bimla Nayyar, underwent an unnecessary brain surgery, also known as a craniotomy, after another patient's CAT scan results were mistakenly placed in her medical file. She died approximately two months later, after experiencing a series of medical complications following the craniotomy. The action here arises from a lawsuit filed by plaintiff following the decedent's death, in which a jury found in plaintiff's favor and awarded $20 million in damages.

A summary of the protracted procedural history of this case is necessary to a proper understanding of the present appeal. Central to the proceedings is an order of peremptory reversal entered by this Court in July 2015. *Estate of Nayyar v Oakwood Healthcare, Inc*, unpublished order of the Court of Appeals, entered July 15, 2016 (Docket No. 329135). There, this Court

-1-

vacated a June 2015 judgment for plaintiff and instead remanded for entry of an order of JNOV in favor of defendant. This Court's prior opinion in another appeal arising out of this case, *Estate of Nayyar v Oakwood Healthcare, Inc*, unpublished per curiam opinion of the Court of Appeals, issued May 14, 2020 (Docket No. 343676), pp 2-8, summarizes the relevant background as follows:

> *Initial Lawsuit Dismissed With Prejudice*. After Bimla's death, her estate, represented by her son Rakesh Nayyar, sued Oakwood Hospital and several individuals. To avoid confusion, the initial lawsuit filed in Wayne County Circuit Court (Docket No. 12-013694-NO) will be referred to as the "first lawsuit," and the estate will be referred to as "plaintiff" throughout this opinion.

> In the first lawsuit, plaintiff alleged counts of ordinary negligence and vicarious liability against Oakwood Hospital and a count of battery against Samer Elfallal, D.O., and Tejpaul Pannu, M.D., for performing an unnecessary craniotomy on Bimla. The defendants moved for summary disposition, and the trial court granted the motion. Counsel for the defendants drafted the proposed order, and the draft order made clear that dismissal of the ordinary-negligence claim would be "with prejudice." Plaintiff's counsel asked that language be added to make clear that plaintiff could refile a similar complaint for medical malpractice, and the defendants' counsel agreed. The resulting language, stipulated as to form by plaintiff's counsel and signed by the trial court, stated in relevant part:

>> IT IS HEREBY ORDERED that Defendants' Motion for Summary Disposition is GRANTED, that Plaintiff's claims of ordinary negligence contained in Count I and battery contained in Count III are dismissed with prejudice, and that the above cause is hereby dismissed in its entirety for the reasons stated on the record.

>> IT IS FURTHER ORDERED that entry of this order shall not preclude Plaintiff from bringing a medical malpractice claim. [Order entered Feb. 19, 2013, Docket No. 12-013694-NO.]

> Relevant to this appeal, the following are matters evident from the record in the first lawsuit: (1) the trial court dismissed plaintiff's ordinary-negligence claim with prejudice; (2) plaintiff's counsel negotiated the right to refile a lawsuit for medical malpractice; and (3) the trial court expressly preserved in its order plaintiff's right to refile a lawsuit claiming medical malpractice. Plaintiff did not move for reconsideration or appeal the dismissal order.

> *Second (Current) Lawsuit*. On July 26, 2013, plaintiff refiled its complaint in Wayne County Circuit Court (Docket No. 13-009819-NH), this time naming only Oakwood Hospital as defendant. This is the lawsuit to which the current appeal relates.

> In this second (current) lawsuit, plaintiff alleged the same essential facts as in the first one, and plaintiff set forth one count of "negligence" against the hospital.

The allegations in the complaint make clear that the negligence claim is one for medical malpractice.  For example, plaintiff alleged that Bimla "received the care and treatment constituting the malpractice" of defendant and that defendant owed Bimla "a duty to maintain the standard of care and treatment of its peers within the professional community of hospital administrations across the country."  Plaintiff also attached two affidavits of merit in support of the complaint pursuant to MCL 600.2912d.

*Discovery and Pretrial-Motion Practice*.  Discovery and pretrial-motion practice ensued in this case for several years.  Throughout this period, plaintiff consistently referred to the action as a "medical malpractice matter" or words to that effect. . . .

As part of discovery, plaintiff served requests to admit on defendant, and, in response, defendant admitted the following: ". . . Defendant admits that Defendant and/or Defendant's agents owed a duty to Bimla Nayyar to refrain from placing Bimla Nayyar's name on a radiology slide that belonged to another patient, and that Defendant and/or its agents failed to fulfill this duty.  Defendant further admits that Bimla Nayyar underwent an unnecessary craniotomy on January 9, 2012, as a result of this failure." . . .  Subsequently, defendant consistently acknowledged that it had breached the appropriate standard of care and that the only two elements at issue for trial were causation and damages. . . .

Although the parties had repeatedly characterized plaintiff's claim as one for medical malpractice, as the trial date grew near, the record shows that plaintiff began to resurrect the ordinary-negligence claim dismissed in the first lawsuit.  To illustrate, a couple of weeks prior to trial, defendant moved to preclude plaintiff from asserting any new claim not included in the complaint in this case.  In response, plaintiff characterized this case as a "medical malpractice action," denied that the "claims of malpractice have not been pled with reasonable definiteness and certainty," and expressly denied that plaintiff had any intention "to assert any 'new theories' not already pled in [its] complaint." . . .

But then, just a few days before trial, the record shows a material shift in plaintiff's approach to this case.  On April 20, 2015, the trial court held a hearing on various pretrial motions in limine.  During the hearing, plaintiff's counsel asserted, "Operating on the wrong patient is not medical malpractice.  Never has been.  Never will be." . . .  Then on April 24, 2015, the parties submitted a proposed joint pretrial order . . .  [C]onsistent with the argument made during the prior motion hearing, plaintiff identified the issues of law that it believed were pertinent to the trial, and it included in this list whether "any cap on damages [applied] in this case (to be decided after trial)."  Medical-malpractice claims are subject to certain statutory caps on damages, while ordinary-negligence claims are not.  See MCL 600.1483.  The trial court entered the order with this language on April 27, 2015.

*Jury Trial and Various Trial Motions*. On the same day that the trial court entered the final pretrial order, the jury trial commenced. Prior to jury selection, the trial court and counsel for the parties handled various preliminary matters. It was during this colloquy that plaintiff's counsel exclaimed on the record, "This isn't a malpractice claim. No." . . . Plaintiff's counsel argued that it was only after the close of proofs that the trial court should make a determination whether this was a medical-malpractice claim or an ordinary-negligence claim. . . .

Defendant's counsel immediately asked for clarification, "Am I understanding [plaintiff's counsel] to say this is not a malpractice case, but an ordinary negligence case?" Plaintiff's counsel responded, "And I will make that—that's not only correct, but it's going to—and I'm going to ask the Court to so find at the conclusion of this case because that's what the statute says." . . . Because the ordinary-negligence claim had already been dismissed "with prejudice" in the first lawsuit, defendant's counsel moved immediately to dismiss the current lawsuit based on plaintiff's counsel's statement that he intended to go forward on an ordinary-negligence claim. . . . The trial court denied the motion and, after reading defendant's earlier admission, it explained, ". . . . the Court finds that the basis for the admission of liability was the professional negligence which was set forth therein; however, there still has to be a supporting evidence for the proximate cause. So we will litigate the issues of proximate cause." . . .

A jury was then selected and instructed. The trial court described plaintiff's claim as one "involving wrongful death, medical malpractice" and characterized plaintiff's burden as one involving "professional negligence or malpractice" of the defendant. . . . Consistent with defendant's earlier admissions, the trial court instructed the jury that "the issues of negligence have been admitted." . . . This effectively removed any question as to the appropriate standard of care or breach, and the jury was instructed solely with respect to causation and damages (as well as other standard instructions).

The question of ordinary negligence versus medical malpractice continued to play out over the next several days of trial. Plaintiff's counsel submitted a memorandum to the trial court arguing that this case involved ordinary negligence. According to plaintiff's counsel, "No court could ever hold that operating on the wrong patient raises questions involving medical judgment." . . . Consistent with this memorandum, plaintiff's counsel subsequently filed a motion with both the trial court in the current lawsuit and the trial court in the first lawsuit to, in the words of plaintiff's counsel, "correct the obvious clerical error in the order which indicated that there was a dismissal with merits, on the merits of this case which cannot be under the law." . . . Plaintiff's counsel further characterized the dismissal of the ordinary-negligence claim with prejudice in the first lawsuit as a "trick" played by defendant's counsel. . . . In response, defendant's counsel pointed out that (1) plaintiff's counsel did not appeal the earlier dismissal, (2) plaintiff's counsel had been involved in negotiating the wording of the proposed order of dismissal, and (3) defendant's counsel would have made different strategic choices in the current lawsuit had this been an ordinary-negligence case from the outset. . . .

On the fifth day of trial, the trial court in this lawsuit granted plaintiff's motion to correct, holding that the trial court in the first lawsuit must have made an error. The trial court held that the prior dismissal order had to be corrected so that the dismissal of the ordinary-negligence claim would be without prejudice. . . . The trial court entered an order to this effect. Yet, the very next day, the same trial court vacated its order and directed plaintiff to file the motion with the trial court in the first lawsuit. In vacating its order, the trial court also ordered "sua sponte that Plaintiff's complaint is amended to include a claim of ordinary negligence." . . . (For its part, the trial court in the first lawsuit subsequently denied plaintiff's motion, holding, "There has been no showing of any clerical error or mistake." . . . Plaintiff's attempts to appeal this decision were unsuccessful.)

The legal wrangling over whether plaintiff had a viable ordinary-negligence claim played out primarily outside the presence of the jury. In line with the trial court's instructions at the outset of the trial, the testimony presented to the jury focused on causation and damages. Plaintiff's counsel elicited testimony that, prior to the unnecessary brain surgery, Bimla had been in relatively good health for a person of her age and medical history, while defendant's counsel elicited testimony to the contrary. There was testimony describing Bimla's complications and suffering after the surgery, omissions or misleading statements in the subsequent medical history that arguably exacerbated her complications and suffering, and her family members' pain and loss over the passing of the family matriarch. This testimony had no particular bearing on whether defendant breached a specific standard of care with respect to its treatment of Bimla.

With that said, plaintiff's counsel did elicit testimony at trial on the standard of care and breach. A review of the record confirms that this testimony was not voluminous, but it was pointed. On multiple occasions, plaintiff's counsel asked, and a medical witness answered, a variant of the following: "Q. You don't have to be a doctor to know you can't operate on the wrong patient to do brain surgery . . . do you? . . . A. I don't think you need to be a doctor to understand that you should not do brain surgery on a – patient. I agree with you." . . . Defendant's counsel objected to this line of questioning, arguing that the testimony raised issues involving the proper standard of care and breach, but the trial court overruled the objection without explanation. . . .

In fact, the reason for this testimony was made clear by plaintiff's counsel, when he argued to the trial court that this testimony confirmed that this was an ordinary-negligence case, not a medical-malpractice one: "The defendant claims that they engaged the trickery, and they got Judge Oxholm [the trial judge in the first lawsuit] to dismiss the negligence case with prejudice and so the plaintiff can never, you can never make a determination. [Defendant's counsel is] going to make this argument that this case is not [sic] a medical malpractice case even though it's obviously not, even though every witness on the stand has testified this is what that's that you don't need to be a doctor to figure out that you don't operate on the wrong patient." . . . As noted, plaintiff's counsel asked a variant of this question multiple times, and each time the jury heard the testimony in answer.

After the close of proofs on the sixth day of trial, the trial court instructed the jury on the elements of causation and damages, but not the standard of care or breach. The jury found in favor of plaintiff and awarded $300,000 in economic damages and $19.7 million in noneconomic damages. The trial court entered judgment in plaintiff's favor for the full, uncapped amount of the award. Consistent with the position at trial, plaintiff maintained throughout the post-trial proceedings before the trial court that this was an ordinary-negligence case. The trial court agreed, as it declined to apply the statutory caps on damages for medical-malpractice awards.

Defendant subsequently moved for a new trial and for judgment notwithstanding the verdict (JNOV). With respect to the JNOV motion, defendant argued that plaintiff admitted during the trial that this was not a medical-malpractice case but, rather, an ordinary-negligence case. But, as defendant pointed out, plaintiff's ordinary-negligence claim had been dismissed with prejudice, the dismissal had not been appealed, and the first trial court had held that there was no clerical error or mistake with respect to the dismissal. Because plaintiff did not appear to have a viable claim remaining—no medical-malpractice claim (abandoned) and no ordinary-negligence claim (dismissed on merits)—defendant sought a JNOV. Plaintiff responded in relevant part, "Based on the evidence adduced at trial, it became blatantly clear that Plaintiff's claims against Defendant sounded in ordinary negligence, and not medical malpractice (the hospital operated on the wrong patient), and on May 5, 2015, this court entered an order allowing Plaintiff to pursue an 'ordinary negligence' claim pursuant to MCR 2.118(C)." . . .

The trial court denied the motion for JNOV, explaining from the bench, "At this juncture, the Court sees no reason to undo the jury's verdict. That has been submitted, and the Court will continue to let the jury's verdict stand." . . . It entered an order to this effect on August 18, 2015, and the trial court likewise denied the motion for a new trial in an order entered on August 20, 2015.

*Defendant's First Appeal.* On September 4, 2015, defendant filed an appeal as of right with this Court. Relevant to the current appeal, defendant also moved the prior panel for peremptory reversal, the thrust of which was that because the trial court in the first lawsuit had dismissed the ordinary-negligence claim on the merits, and plaintiff had tried this action as an ordinary-negligence case, his ordinary-negligence claim was barred as a matter of law, and defendant ought to have been granted JNOV. Defendant argued that plaintiff was precluded by the collateral-attack doctrine, as well as by collateral estoppel and res judicata, from securing a judgment that thwarted the trial court's order of dismissal in the first lawsuit.

In response to defendant's motion and consistent with the proceedings below, plaintiff argued that this was an ordinary-negligence case rather than a medical-malpractice case. According to plaintiff, "It is true that the Estate is committed to the position that plaintiff's claim is one for ordinary negligence." . . . Plaintiff further asserted, "Plaintiff was allowed to re-file and litigate his negligence

-6-

claim, and the proofs adduced throughout litigation established that the claim sounded in ordinary negligence, not medical malpractice." . . .

The Court granted defendant's motion for peremptory reversal. The order reversed the trial court's order denying defendant's motion for JNOV, vacated the trial court's judgment in favor of plaintiff, and remanded with instructions for the trial court to enter an order granting defendant's motion for JNOV. Specifically, this Court's order provided:

> The Court orders that the motion for peremptory reversal pursuant to MCR 7.211(C)(4) is GRANTED. As we previously held in *Estate of Nayyar v Oakwood Healthcare, Inc*, unpublished order of the Court of Appeals, entered June 4, 2015 (Docket No. 327506), the Wayne Circuit Court's May , 2015 order amending the complaint to include a claim of ordinary negligence constituted an impermissible collateral attack on the February 19, 2013 order entered in WCCC No. 12-013694-NO. *People v Howard*, 212 Mich App 366, 369; 538 NW2d 44 (1995) ("a collateral attack occurs whenever a challenge is made to a judgment in any manner other than through a direct appeal."). The latter order granted defendant's motion for summary disposition, dismissed plaintiff's ordinary negligence claim with prejudice, and expressly resolved the last pending claim in the matter. Plaintiff did not appeal. The February 19, 2013 order therefore constituted a final ruling on the merits and is immune from collateral attack. *Leahy v Orion Twp*, 269 Mich App 527, 530; 711 NW2d 438 (2006) ("a decision is final when all appeals have been exhausted or when the time available for an appeal has passed"); *Kosch v Kosch*, 233 Mich App. 346, 353; 592 NW2d 434 (1999) ("Defendant's failure to file an appeal from the original judgment . . . pursuant to MCR 7.205(A) or (F), precludes a collateral attack on the merits of that decision."). Further, because the same parties fully litigated the viability of ordinary negligence in a prior proceeding and the result of that proceeding would have bound either party, collateral estoppel precludes plaintiff from asserting ordinary negligence now. *Detroit v Qualls*, 434 Mich 340, 357; 454 NW2d 374 (1990) (a ruling on summary disposition resolves a matter on the merits for purposes of collateral estoppel); see also *Monat v State Farm Ins Co*, 469 Mich 679, 691; 677 NW2d 843 (2004). Indeed, under the February 19, 2013 order, only the alternate theory of medical malpractice remained available to plaintiff against this defendant. See *Bryant v Oakpointe Villa Nursing Ctr*, 471 Mich 411, 420-422; 684 NW2d 864 (2004) (explaining that although arising out of a single occurrence, medical malpractice and ordinary negligence present alternate theories of liability). Accordingly, where plaintiff unequivocally proceeded in this action under an ordinary negligence

-7-

theory and the jury awarded damages under that theory, defendant was entitled to judgment notwithstanding the verdict (JNOV).

> The Wayne Circuit Court's August 18, 2015 order denying defendant's motion for JNOV is REVERSED, the June 8, 2015 Judgment is VACATED and the cause is remanded for entry of an order granting defendant's motion for JNOV. [*Estate of Nayyar* (Docket No. 329135), unpub order at 1.]

The Court subsequently denied plaintiff's motion for reconsideration, and our Supreme Court denied plaintiff's application for leave as well as a subsequent motion for reconsideration. *Estate of Nayyar v Oakwood Healthcare, Inc*, 500 Mich 1032; 897 NW2d 183 (2017), recon den 501 Mich 972 (2018).

On remand, plaintiff filed a motion asking the trial court to first enter an order of JNOV as directed by this Court, and subsequently enter an order granting plaintiff relief from the JNOV order under MCR 2.612(C)(1)(a), (c), and (f). The trial court did just that, entering an order granting JNOV in favor of defendant, but then immediately entering another order granting plaintiff relief from that order. Defendant filed an emergency application for leave to appeal, which this Court granted. This Court ultimately concluded that the trial court exceeded its authority on remand when it granted relief to plaintiff. *Estate of Nayyar* (Docket No. 343676), unpub opn at 1. This Court also concluded that because the law-of-the-case doctrine applied, it was "bound by the prior panel's [peremptory-reversal] order," and was not authorized to grant relief to plaintiff. *Id*. This Court explained, in pertinent part:

> With respect to the trial court's order granting plaintiff relief from the JNOV, the trial court premised its ruling on its belief that the prior panel made a mistake in concluding that the jury trial involved a question of ordinary negligence. This ruling by the trial court and its underlying finding were outside of that court's scope of authority on remand. The prior panel made two findings that were key to its peremptory order: (1) "plaintiff unequivocally proceeded in this action under an ordinary negligence theory"; and (2) "the jury awarded damages under that theory." Regardless of whether the trial court believed that the prior panel made a mistake with either finding, as a lower court in our hierarchical judicial system, the trial court did not have the authority to, in effect, overrule a higher court. Decades, if not centuries, of case law counsel against this. Furthermore, the prior panel's order gave clear, specific instructions for the trial court to follow on remand, and the trial court did not have the authority to take action inconsistent with those instructions, which the trial court did by granting relief that subverted the prior panel's instructed relief. See *Bennett v Bennett*, 197 Mich App 497, 501-502; 496 NW2d 353 (1992) ("Where a litigant believes that this Court erred, the appropriate remedy is to seek either rehearing in this Court or leave to appeal to the Supreme Court, not to return to the trial court and argue that the Court of Appeals decision was erroneous and, therefore, should not be followed.").

Additionally, this Court noted that the trial court was prohibited from relying on MCR 2.612 "as a means for expanding its limited authority on remand," particularly if the law-of-

the-case doctrine was applicable. *Estate of Nayyar* (Docket No. 343676), unpub op at 10, citing *Sumner v Gen Motors Corp* (*On Remand*), 245 Mich App 653; 633 NW2d 1 (2001). This Court noted that, according to *Sumner*, a trial court's authority to grant relief from judgment is limited to circumstances in which the trial court is granting relief from its *own* judgment, and that it could not rely on MCR 2.612 to grant relief from a judgment handed down by a higher court. *Id*.

This Court then considered the scope of its own authority with respect to the prior panel's order of peremptory reversal. This Court held that it had "a 'mandatory obligation' to adhere to the law-of-the-case doctrine except in several well-defined, limited circumstances," such as a material change of the facts on remand, an intervening change in the law, or a "significant competing interest at stake, such as a constitutional right[.]" *Id*. at 11. This Court concluded that none of the exceptions applied. *Id*. at 12.

Turning to plaintiff's assertion that the decision of the prior panel was mistaken, this Court conceded that a case could be made that the prior panel erred by granting peremptory reversal, but declined to determine whether the prior panel erred because "[c]ase law in this jurisdiction is clear that the law-of-the-case doctrine applies regardless of the correctness of the prior determination." *Id*. at 12-13. In other words, the Court's decision rested primarily if not exclusively on the law of the case doctrine. It concluded that even if the peremptory reversal had been a clear error causing manifest injustice, plaintiff was "without recourse under our current precedent" because "the correctness of a prior panel's decision is not subject to review under our law-of-the-case doctrine." *Id*. at 14. The panel, however, urged our Supreme Court to "revisit whether, under the law-of-the-case-doctrine, a panel has the authority to correct a clear error by a prior panel so as to avoid manifest injustice in a civil matter." *Id*. Ultimately, this Court affirmed the trial court's initial grant of JNOV to defendant, reversed the court's order granting plaintiff relief from that JNOV order under MCR 2.612, and instructed the trial court on remand to reinstate the order of JNOV in favor of defendant.

JUDGE METER concurred in part and dissented in part, stating that while he concurred based on the law of the case, he concluded that granting peremptory reversal had been "a mistake." He noted that defendant had admitted to breaching the standard of care before trial, and that the testimony at trial focused on causation and damages, explaining that

> any and all testimony elicited by plaintiff regarding the relevant standard of care and associated breach were completely irrelevant, as the majority recognizes. Whether plaintiff proceeded through trial under a theory of medical malpractice or ordinary negligence, the issue of causation was the same. See *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 496-497; 791 NW2d 853 (2010). [*Estate of Nayyar* (Docket No. 343676), unpub op at 2 (METER, P.J., concurring in part and dissenting in part).]

JUDGE METER concluded that the prior panel "should have remanded the case for entry of judgment in favor of defendant (sic), but with damages capped, which is standard operating procedure that trial courts can easily accomplish post-verdict in any medical malpractice case. See MCL 600.6304(5)." *Id*. at 1. JUDGE METER also separately urged the Michigan Supreme Court to "reexamine and clarify the law-of-the-case doctrine in cases involving, as here, 'lateral review.' " *Id*. at 2.

Plaintiff applied for leave to appeal this Court's decision in Docket No. 343676, but our Supreme Court denied leave. *Estate of Nayyar v Oakwood Healthcare, Inc*, 507 Mich 999; 961 NW2d 147 (2021). After this Court issued its decision, but before the case returned to the trial court for entry of an order granting defendant JNOV as directed by this Court, our Supreme Court decided *Rott v Rott*, 508 Mich 274, 288; 972 NW2d 789 (2021), in which it recognized an exception to the law-of-the-case doctrine for prior decisions that are clearly erroneous and result in manifest injustice. Thereafter, on January 21, 2022, the trial court entered an order on remand granting defendant JNOV as directed by this Court. This appeal followed.

## II. JURISDICTIONAL CHALLENGE

As an initial matter, defendant challenges the Court's jurisdiction over this appeal. Although defendant does not dispute that plaintiff timely filed a claim of appeal from the trial court's January 21, 2022 order, it argues that the January 21 order itself was final under MCR 7.202(6)(a)(i), and that consequently, this Court does not have jurisdiction over the matter under MCR 7.203(A)(1). Defendant raised an identical argument in a motion to dismiss, which this Court denied. *Estate of Nayyar v Oakwood Healthcare, Inc*, unpublished order of the Court of Appeals, entered May 6, 2022 (Docket No. 360257). This Court's previous decision on this issue is the law of the case, which we are bound to follow. See *Bennett v Detroit Police Chief*, 274 Mich App 307, 311 n 1; 732 NW2d 307 (2006) (applying the law-of-the-case doctrine to avoid revisiting a jurisdictional challenge in a brief because "[t]his Court's order denying plaintiff's motion to dismiss based on the jurisdiction of this Court controls the outcome of this issue on appeal").[1] We thus decline to revisit defendant's finality challenge here.

Defendant also argues that plaintiff does not have appellate standing, stating that plaintiff was not aggrieved by the trial court's January 21 order. We disagree. MCR 7.203(A) provides that this Court has jurisdiction of an appeal by right "filed by an aggrieved party." An aggrieved party must have suffered a concrete and particularized injury, as would a party plaintiff initially invoking a court's power. *Manuel v Gill*, 481 Mich 637; 643-644, 753 NW2d 48 (2008). Accordingly, an appellant must demonstrate an injury arising from the actions of the trial court rather than an injury arising from the underlying facts of the case. *Id*. at 644. Defendant argues that plaintiff was not aggrieved by any decision made by the trial court because the January 21 order granting JNOV in favor of defendant was entered in accordance with this Court's directive in *Estate of Nayyar* (Docket No. 343676), unpub op at 14. However, we find that plaintiff was injured by the trial court's entry of the January 21 order, which granted JNOV to defendant, reversing a prior judgment in plaintiff's favor and essentially closing the case. Plaintiff is an aggrieved party because he suffered a concrete and particularized injury from the trial court's order granting JNOV in favor of defendant and closing the case. Therefore, we reject defendant's argument that this Court lacks jurisdiction over this appeal.

---

[1] Contrary to what defendant asserts, the law-of-the-case doctrine is not limited to cases in which a previously decided issue is raised in a *subsequent appeal*. See *McNees v Cedar Springs Stamping Co (After Remand)*, 219 Mich App 217, 221-222; 555 NW2d 481 (1996) ("Under the doctrine of law of the case, an appellate court's decision concerning a particular issue binds courts of equal or subordinate jurisdiction during subsequent *proceedings* in the same case.") (emphasis added).

-10-

### III. LAW-OF-THE-CASE DOCTRINE

This appeal turns on whether our Supreme Court in *Rott*, which was decided after this Court directed the trial court to enter an order granting JNOV to defendant, expressly ruled that an exception to the application of the law-of-the-case doctrine exists in cases where a "prior decision is clearly erroneous and would work a manifest injustice." 508 Mich at 288, quoting *Pepper v United States*, 562 US 476, 506-507; 131 S Ct 1229; 179 L Ed 2d 196 (2011). We conclude that our Supreme Court did expressly clarify that an exception to the law-of-the-case doctrine exists in such situations. We further conclude that plaintiff has adequately demonstrated that the exception should be applied herein.

### A. LEGAL BACKGROUND

"[T]his Court reviews de novo the determination whether the law-of-the-case doctrine applies and to what extent it applies." *Lenawee Co v Wagley*, 301 Mich App 134, 149; 836 NW2d 193 (2013) (quotation marks and citation omitted). Under the law-of-the-case doctrine, the ruling of an appellate court on a particular issue binds the appellate court and all lower courts with respect to that issue. *Farish v Dep't of Talent & Economic Dev*, 336 Mich App 433, 449; 971 NW2d 1 (2021). The doctrine only applies to legal questions actually determined in the prior decision and to issues necessary to that earlier determination. *Id*. The aim of the doctrine is to ensure consistency and to " 'avoid reconsideration of matters once decided during the course of a single lawsuit.' " *AFT v Michigan*, 334 Mich App 215, 225; 964 NW2d 113 (2020) (citation omitted).

One of our Supreme Court's most recent decisions regarding the law-of-the case doctrine is *Rott*, 508 Mich 272. In *Rott*, the plaintiff sued the defendant under theories of negligence and premises liability after she was injured while riding a zip-line in the defendant's backyard. *Id*. at 282. The defendant moved for summary disposition, claiming that the plaintiff's cause of action was barred by the Recreational Land Use Act (RUA), MCL 324.73301(1). The trial court agreed that the RUA applied, but denied the motion for summary disposition because there were genuine issues of material fact regarding whether the defendant was grossly negligent or engaged in willful and wanton misconduct under the RUA. *Rott*, 508 Mich at 282.

Whether the RUA applied became a major point of contention between the parties. On appeal, the plaintiff argued that the RUA did not apply and moved for peremptory reversal, while the defendant argued that summary disposition was improperly denied, but did not respond to the plaintiff's request for peremptory reversal. *Id*. at 282-283. This Court denied the plaintiff's motion for peremptory reversal and application for leave to appeal, citing a failure to persuade the Court of the need for immediate appellate review. *Id*. at 283. However, this Court granted the defendant's application for leave, limited to the issues raised in his application. *Id*. In her answer to the defendant's application for leave to appeal, the plaintiff specifically asserted that she had not conceded that the RUA was applicable. *Id*.

This Court subsequently reversed the trial court, concluding that the plaintiff had not presented evidence of gross negligence. In so ruling, this Court presumed that the RUA was applicable, but did not offer any analysis on that point. *Id*. at 283-284. The case was remanded to the trial court for entry of a judgment in favor of the defendant, at which point the plaintiff appealed

-11-

as of right, claiming once again that the RUA was not applicable. *Id*. at 284. This Court concluded that the prior decision was the law of the case with respect to that issue. *Id*.

The plaintiff applied for leave to appeal in the Michigan Supreme Court, which ultimately held that this Court erred by invoking the law-of-the-case doctrine because the plaintiff had not conceded, waived, or forfeited her right to challenge whether the RUA was applicable. *Id*. at 288. The Court noted that this Court's order denying the plaintiff's application for leave to appeal did not address the applicability of the RUA and was not a decision on the merits. *Id*. at 289. Similarly, the order granting the defendant's application for leave to appeal was limited to the issues raised in the application, which did not include whether the RUA was applicable. *Id*. The Supreme Court held that this Court's application of the law-of-the-case doctrine was improper because this Court could not have implicitly or explicitly decided the applicability of the RUA in the prior appeal because the issue was never properly before this Court in that appeal. *Id*.

In its discussion of the law-of-the-case doctrine, the Supreme Court explained that the doctrine is not a limit on the power of the judiciary, but instead reflects the practice of courts to refuse to reopen what has already been decided. *Id*. at 287. Significantly, citing a United States Supreme Court decision, the Court noted that an exception to the law-of-the-case doctrine exists if a prior order or judgment is clearly erroneous and would result in manifest injustice, stating:

> We also heed the United States Supreme Court's astute observation that the "doctrine does not apply if the court is convinced that its prior decision is clearly erroneous and would work a manifest injustice." *Pepper v United States*, 562 US 476, 506-507; 131 S Ct. 1229; 179 L Ed 2d 196 (2011) (quotation marks, citations, and brackets omitted). [*Rott*, 508 Mich at 288.]

Cf. *Christianson v Colt Indus Operating Corp*, 486 US 800, 817; 109 S Ct 2166; 100 L Ed 2d 811 (1988) (recognizing that a court "has the power to revisit [a] prior decision[] of its own . . . in any circumstance, although as a rule courts should be *loathe to do so in the absence of extraordinary circumstances* such as where the initial decision was clearly erroneous and would work a manifest injustice.") (quotation marks and citation omitted; emphasis added); see also Wright, Miller, & Cooper, *Federal Practice & Procedure*, § 4478 (observing that "[t]he exception that allows departure from the law-of-the-case doctrine when the earlier decision was clearly erroneous and would work a manifest injustice is more likely to be described than employed") (quotation marks and footnote omitted).

## B. APPLICATION

As an initial matter, defendant argues that *Rott* did not overrule prior precedent disavowing the clearly erroneous/manifest injustice exception to the law-of-the-case doctrine, and asserts that the holding in *Rott* is narrow and should be limited to its facts. We disagree.

Defendant cites *Gourlay v Ins Co of N America*, 189 Mich 384, 386; 155 NW 483 (1915) for the proposition that Michigan strictly applies the law of the case doctrine. *Gourlay* did decline to adopt other states' exceptions to the doctrine, but at the same time stated "that this court has the

power to now reverse its former judgment and, for that purpose power to consider again the question and arguments heretofore and now presented by the appellant." *Id*.at 385-386.[2]

Further, *Rott* itself does not indicate that its holding is limited to the facts of that case. In sum, we conclude that the Supreme Court's decision in *Rott* recognizes an exception to the application of the law-of-the-case doctrine for prior decisions that are clearly erroneous and would result in manifest injustice if the doctrine were to be applied.

As to the substance of plaintiff's law-of-the-case claim, we observe that this Court's earlier order granting defendant's motion for peremptory reversal resulted in two key conclusions: (1) that plaintiff was procedurally barred from pursuing a claim for ordinary negligence, and (2) that defendant was therefore entitled to entry of an order of JNOV. We agree that plaintiff is procedurally barred from pursuing a claim for ordinary negligence. However, we find that the panel's second determination—that defendant was entitled to entry of an order of JNOV— qualifies as clearly erroneous, and that this decision has resulted in manifest injustice to plaintiff under the circumstances presented in this case.

"Whether a claim sounds in ordinary negligence or medical malpractice is a question of law that is reviewed de novo." *Trowell v Providence Hosp & Med Ctrs, Inc*, 502 Mich 509, 517; 918 NW2d 645 (2018). The prior panel's determination that defendant was entitled to JNOV was grounded in its belief that plaintiff brought this action under an ordinary negligence theory, rather than a medical malpractice theory. After reviewing the record of the jury trial in its entirety, we are of the view that the previous panel erroneously concluded that the plaintiff's claim sounded in ordinary negligence and that consequently, the jury's verdict was predicated solely on a theory of ordinary negligence. The jury's award of damages was consistent with an award of damages for medical malpractice since damage caps are enforced only after a verdict.

Plaintiffs in medical malpractice cases commonly argue that a claim sounds in ordinary negligence rather than medical malpractice, presumably in an attempt to avoid the stringent statutory requirements and damages cap applied to medical malpractice claims. This has occurred with such frequency that our Supreme Court has gone so far as to explain that a plaintiff cannot couch a medical malpractice claim in a theory of ordinary negligence to avoid the statutory and procedural requirements attendant to a medical malpractice claim. *Dorris v Detroit Osteopathic Hosp*, 460 Mich 26, 43; 594 NW2d 455 (1999). Such procedural requirements include providing the "health facility" or "health professional" against whom suit will be brought with notice of

---

[2] Defendant also cites *Johnson v White*, 430 Mich 47, 55; 420 NW2d 87 (1988), claiming that it establishes that the clearly erroneous exception to the law-of-the-case doctrine is not applicable in Michigan. In *Johnson*, however, the Court expressly declined to consider whether the exception should be adopted for purposes of that case. We also note that this Court has stated that "[e]ven if [a] prior decision was erroneous, *that alone* is insufficient to avoid application of the law of the case doctrine." *Duncan v Michigan*, 300 Mich App 176, 189; 832 NW2d 761 (2013) (emphasis added); see also *Augustine v Augustine v Allstate Ins Co*, 292 Mich App 408, 425; 807 NW2d 77 (2011).

intent to file a lawsuit, as well as supporting the complaint with an affidavit of merit from a health professional. See MCL 600.2912b and MCL 600.2912d.

In the instant case, plaintiff sent a notice of intent and submitted an affidavit of merit with the complaint satisfying these two requirements for filing a medical malpractice suit and the allegations made it clear that the claim was one for medical malpractice. The complaint alleged that the decedent experienced "care and treatment constituting . . . malpractice" and that defendant owed the decedent "a duty to maintain the standard of care and treatment of its peers within the professional community of hospital administrations across the country," which are obviously statements indicating that the claim was one for medical malpractice.

Moreover, defendant conceded professional negligence, so when the case proceeded to trial, the jury was charged with determining only whether defendant's breach of the standard of care proximately caused the decedent's death and the amount of damages. In its preliminary instructions at the start of trial, the trial court advised the jury that defendant had admitted its negligence, but contested that the craniotomy was the proximate cause of the decedent's death, and informed the jury that plaintiff was alleging wrongful death and "medical malpractice." The trial court further instructed the jury, in pertinent part:

> The plaintiff has the burden of proof on each of the following: That the plaintiff sustained injury and damages, that the professional negligence or malpractice of the defendant was a proximate cause of the injury and damages to the plaintiff.

> Your verdict will be for the plaintiff if the defendant was negligent and such negligence was a proximate cause of the plaintiff's injuries and if there were damages.

> Your verdict will be for the defendant if the defendant was professionally negligent or did commit malpractice, but such professional negligence or malpractice was not a proximate cause of plaintiff's injuries or damages[.]

In their opening statements, plaintiff's counsel addressed all of the various ailments that the decedent suffered following the craniotomy, and described how her health had deteriorated. In response, defense counsel described the decedent's health issues both before and after the craniotomy, and asserted that the unnecessary craniotomy was "inconsequential" to how she ultimately died. Both parties called several medical experts at trial, but the testimony of these witnesses principally involved the issue of causation, not professional negligence, which defendant had conceded. Similarly, during closing arguments, the parties focused on whether the craniotomy proximately caused the decedent's death. Our review of plaintiff's counsel's closing argument does not reveal that counsel referred to plaintiff's claim as one involving ordinary negligence.

In sum, after reviewing the trial record, it is clear that this case proceeded to trial and was tried as a medical malpractice case. Thus, the record does not support the prior panel's conclusion that plaintiff proceeded under a theory of ordinary negligence. Indeed, it is apparent that at trial, the distinction between a claim for medical malpractice and one for ordinary negligence was largely irrelevant. The distinction between these two types of claims primarily involves an

-14-

assessment of the defendant's alleged conduct, and defendant conceded professional negligence. Consistent with this posture of the case, the trial court instructed the jury in its final instructions as follows:

> The plaintiff has the burden of proof on each of the following: That the [decedent] sustained injury damages, that the *admitted negligence or malpractice* of the defendant was a proximate cause of the injury or damages to the [decedent].
>
> Your verdict will be for the plaintiff if the defendant's *admitted negligence* was a proximate cause of the [decedent's] injuries and if there were damages.
>
> Your verdict will be for the defendant if the defendant's *admitted negligence* was not a proximate cause of the [decedent's] injuries or damages or the [decedent] was not injured or damaged.

Likewise, the jury verdict form did not require the jury to determine whether defendant was professionally negligent. Instead, the first question on the verdict form asked the jury: "Was Defendants negligence a proximate cause of injuries or damages claimed to Bimla Nayyar." The jury answered this question, "Yes". The remaining questions on the verdict form pertained to the jury's determination of damages.

We are also unable to find a factual or legal basis for the prior panel's statement that the jury awarded damages only under a theory of ordinary negligence. First, as explained earlier, the jury was not required to determine any standard of care that was breached because defendant conceded the issue of professional negligence. Consequently, the jury was instead asked to determine whether the alleged negligence was a proximate cause of the decedent's injuries, which it would have been required to do for both a medical malpractice and an ordinary negligence claim. Second, we acknowledge that the prior panel may have been compelled to believe that this was an ordinary negligence case because the jury's award of damages exceeded the statutory cap on damages applicable to a medical malpractice claim. However, the damages award does not conclusively demonstrate that the jury could only have awarded damages for ordinary negligence because the jury is not supposed to know that there is a cap on damages in medical malpractice cases. Verdicts in medical malpractice cases are subject to statutory caps under MCL 600.1483. However, it is the trial court's responsibility to reduce a jury verdict in accordance with the limitations in the statute after trial, if necessary. Importantly, the jury is not permitted to be advised of those limitations. Specifically, MCL 600.6304(5) provides:

> In an action alleging medical malpractice, the court shall reduce an award of damages in excess of 1 of the limitations set forth in section 1483 to the amount of the appropriate limitation set forth in section 1483. The jury shall not be advised by the court or by counsel for either party of the limitations set forth in section 1483 or any other provision of section 1483.

Thus, to the extent that the jury's verdict exceeded the limitations set forth in MCL 600.1483, it was up to the trial court to reduce the award after trial pursuant to MCL 600.6304(5). Additionally, defendant does not assert that the jury was asked to award, or did award, damages for any item for which damages could not be recovered in a wrongful-death medical malpractice action. As such,

contrary to the prior panel's conclusion, the jury's award of damages in this case is not solely consistent with a theory of ordinary negligence.

We also reject defendant's assertion that plaintiff waived any claim for medical malpractice by asserting in this Court, in response to defendant's motion for peremptory reversal in Docket No. 329135, that plaintiff's claim was one alleging ordinary negligence. In *Home-Owners Ins Co v Perkins*, 328 Mich App 570, 585; 939 NW2d 705 (2019), this Court stated:

> A waiver is "the intentional and voluntary relinquishment of a known right." *Moore v First Security Cas Co*, 224 Mich App 370, 376; 568 N.2d 841 (1997). "[A] valid waiver may be shown by express declarations or by declarations that manifest the parties' intent and purpose, or be an implied waiver, evidenced by a party's decisive, unequivocal conduct reasonably inferring the intent to waive." *Patel v Patel*, 324 Mich App 631, 634; 922 NW2d 647 (2018) (quotation marks and citations omitted).

After reviewing plaintiff's response to the motion for peremptory reversal, we are not persuaded that plaintiff intentionally and voluntarily waived any characterization of his claim as one for medical malpractice.[3] In the context of responding to defendant's argument that preclusion doctrines barred any claim for ordinary negligence, plaintiff noted that ordinary negligence and medical malpractice claims are both grounded in a theory of negligence, with the only difference being whether the negligence occurred in the course of a professional relationship that implicated questions of medical judgment. Plaintiff argued that because the 2012 and 2013 complaints both contained the same claims, preclusion doctrines did not apply to bar his claim. Further, while stating that he was committed to the position that his claim was one for ordinary negligence, and did not implicate questions of professional medical expertise, a position similar to that argued in the trial court, plaintiff acknowledged that he could not change the underlying nature of his claim and that the gravamen of the claim controlled rather than any labels affixed to the claim. Thus, although plaintiff's arguments reflect an effort to persuade this Court that his claim should be viewed as one for ordinary negligence, they do not reflect an intent to relinquish any right to have his claim characterized as one for medical malpractice should this Court disagree.

In sum, the record discloses that despite the efforts by plaintiff's counsel to convince the trial court, and an earlier panel of this Court, that the case sounded in ordinary negligence, it was clearly tried as a medical malpractice case, and the jury was so instructed. Moreover, because the jury was not advised of the limitation on damages applicable to medical malpractice cases, its verdict cannot be viewed as one awarding damages only under a theory of ordinary negligence. Under these circumstances, although the prior panel may have properly concluded that plaintiff was procedurally barred from asserting a claim for ordinary negligence, it clearly erred by holding

---

[3] We also reject defendant's arguments regarding judicial estoppel. Counsel's efforts to persuade the trial court that plaintiff's claim should be treated as one for ordinary negligence involved arguments made outside the presence of the jury. Moreover, they do not establish that the case was actually litigated as an ordinary negligence case, or that the jury awarded damages under that theory. And as explained earlier, the jury was not required to even decide the issue of professional negligence because defendant had conceded that issue for purposes of trial.

that "plaintiff unequivocally proceeded in this action under an ordinary negligence theory and the jury awarded damages under that theory," and, as a result, defendant was entitled to entry of an order of JNOV. *Estate of Nayyar* (Docket No. 329135), unpub order at 1. Thus, plaintiff satisfied the first prong for application of the exception to the law-of-the-case doctrine recognized in *Rott*, 508 Mich at 288, namely, a prior decision that is clearly erroneous.

For the exception to apply, however, plaintiff must also demonstrate that the prior erroneous decision "would work a manifest injustice." *Id.* We conclude that plaintiff has satisfied this second prong. As noted, defendant conceded that a craniotomy had been performed on plaintiff when none was called for because of the mislabeling of a CT scan, and the jury concluded that it caused the death of the plaintiff. While plaintiff's counsel made several remarks at trial that one did not need to be a doctor to know that such an error constituted negligence, those comments bore no relation to the issues that the jury was to determine. The prior panel's peremptory-reversal vacated a jury verdict in favor of plaintiff and granted JNOV in favor of defendant. The panel reached this result after concluding that plaintiff brought the claim under an ordinary negligence theory and that he was procedurally barred from pursuing such a claim. Again, we agree with the prior panel that plaintiff could not pursue a claim for ordinary negligence. However, because defendant admitted professional negligence and given the limited issues the jury was thus called upon to decide at trial, that determination had no practical effect on the jury's verdict. Rather, the only effect of the prior panel's determination should have been to limit plaintiff's damages to those recoverable for medical malpractice, consistent with MCL 600.1483. That was something for the trial court to remedy posttrial, as specified in MCL 600.6304(5). Under these circumstances, where professional negligence was conceded and the issues that the jury was called upon to determine at trial—causation and damages—were irrelevant to whether plaintiff's claim was one for ordinary negligence or medical malpractice, it was manifestly unjust to vacate the jury's verdict and enter a judgment of JNOV in favor of defendant, thereby precluding plaintiff from any recovery whatsoever. Accordingly, plaintiff has satisfied the requirements for avoiding application of the law-of-the-case doctrine where a prior decision was both clearly erroneous and would work a manifest injustice.

For the foregoing reasons, we conclude that we are not bound by the panel's prior determination that defendant is entitled to JNOV. Under these circumstances, the appropriate remedy is to vacate the trial court's January 21, 2022 order granting JNOV in favor of defendant and remand for entry of a judgment in favor of plaintiff.

## IV. CONCLUSION

We vacate the trial court's January 21, 2022 order granting JNOV in favor of defendant and remand for entry of a judgment in favor of plaintiff consistent with the jury's verdict, subject to reduction by the trial court in accordance with MCL 600.6304(5), consistent with MCL 600.1483(1).

We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Douglas B. Shapiro
/s/ Anica Letica